[No. 11915.   Department Two. — July 22, 1889.]

BARBARA JENNINGS, ADMINISTRATRIX, ETC., RESPONDENT, *v.* E. J. LE BRETON, ADMINISTRATOR, ETC., ET AL., APPELLANTS.

SAN FRANCISCO — STREET ASSESSMENT — COMPLETION OF WORK — IMPROPER ACCEPTANCE — REMEDY BY APPEAL. — Under section 12 of the act of April 1, 1872, if the contractor for a street improvement in San Francisco fails properly to complete the work according to contract, and the work is improperly approved or accepted by the superintendent of streets before completion, the only remedy for lot-owners assessed for the improvement is to appeal to the board of supervisors.

ID. — PROOF OF ACCEPTANCE BY SUPERINTENDENT. — The assessment and warrant attached are *prima facie* evidence that work on a street improvement was done to the satisfaction of the superintendent. The superintendent may approve the work upon the certificates of the city surveyor and deputy superintendent without personal inspection, and proof of lack of personal inspection by him does not overcome the proof of acceptance from those certificates showing that the work was completed

according to contract, taken in connection with the personal making and signing of the assessment, diagram, and warrant by the superintendent.

ID. — VALIDITY OF ASSESSMENT — APPORTIONMENT IN PROPORTION TO FRONT-AGE. — A street assessment may be apportioned in proportion to frontage of the land assessed on the improvement, without other reference to benefits.

ESTATES OF DECEASED PERSONS — RESIGNATION OF ADMINISTRATOR — REVO-CATION OF LETTERS — APPOINTMENT OF NEW ADMINISTRATOR — PRE-SUMPTION. — When the record of the probate court shows the resignation of a former administrator, and the settlement of his final account, and the appointment of a new administrator after the date of such settlement, it must be presumed in favor of the action of the court that the former administrator delivered the assets into the custody of the court, or to a person appointed to receive it, in the absence of evidence to the contrary, and that all conditions existed which were necessary to authorize the new appointment. The action of the court was equivalent to an accept-ance of the resignation of the former administrator, and the revocation of his letters.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion.

*W. C. Belcher*, for Appellants.

*J. C. Bates*, and *J. M. Wood*, for Respondent.

VANCLIEF, C. — The action is to recover an assessment amounting to $1,898, for grading Bay Street, between Larkin Street and Van Ness Avenue, in the city of San Francisco, levied upon lot numbered 5 on the diagram of the assessment, having a frontage of 137½ feet on that part of Bay Street alleged to have been graded. Judg-ment was given for plaintiff, and the defendants appeal from the judgment, and from an order denying their motion for a new trial.

The grading was ordered in pursuance of an act of the legislature to authorize the board of supervisors of San Francisco " to order Bay Street graded and to change its grade," passed April 1, 1878, and was done between July 18, 1878, and July 23, 1879. This act authorized

the board to order the grading of the whole or any part of Bay Street from the east line of Larkin Street to the east line of the Presidio Reservation, "without receiving any petition from any person therefor." It also changed the originally authorized grade of said street in several places. The assessment and all proceedings leading to it were had under the general street improvement law, as modified by the act of April 1, 1878, *supra.*

This is the second appeal of this case. The former appeal was under the title of *Jennings* v. *Le Roy*, 63 Cal. 397.

1. The appellants contend, in the first place, that the assessment is invalid, because the work required by the contract was never completed.

The contract for grading had in it this clause: "The roadway, when completed, to have a proper crown to the center from the bottom of the gutter-ways." The grading was wholly in sand dunes, where the sand was much drifted and moved about by the force of the wind. It was proved that when the contractor quit the work of grading, the roadway had a plain surface without crown or gutter-ways, and that immediately afterward the drifting sand began to be deposited on the roadway; and the evidence tended to prove that on account of the natural softness of the sand the roadway was never passable for heavily loaded wagons; and also that the excavation made by the grading had become nearly filled by the drifting sands, at the time of the trial of this case in November, 1885. For these reasons it is contended that the work was not completed.

Section 7 of the act of April 1, 1872 (Stats. 1871–72, p. 809), in force at the time this work was done, provides that the work "must in all cases be done under the direction and to the satisfaction of the superintendent of public streets, highways, and squares"; and the contract under which the work was done in this case was drawn and executed accordingly; and the trial court

found, as facts, that the work was done according to the contract, "under the direction and to the satisfaction of said superintendent, and that said work was duly approved and accepted by said superintendent."

No fraud in the assessment, or in any of the proceedings prior thereto, is charged in the answer; and it is not disputed that the plaintiff made a *prima facie* case in the usual way, by introducing in evidence the assessment, diagram, warrant, etc., with the proper indorsements.

Section 12 of the act of 1872 provides that "all persons, whether mentioned in the assessment or not, feeling aggrieved by any of the acts or determinations of the said superintendent of public streets, highways, and squares, in relation to the acceptance of the work or to the assessment, or to any act, proceeding, matter, or thing done, suffered, or committed by him, shall within fifteen days after the issuance of said assessment, as provided, appeal to said board of supervisors as provided in this section."

On such appeal the board is authorized to correct, alter, or modify the assessment, and may annul the same; "and may make any order or decision in relation to any contract, or the *performance thereof*, or in relation to any of the acts of the contractor or the said superintendent, etc., prior to the date of the hearing of said appeal."

It seems to be well settled that the defendants had no other remedy for the alleged failure of the contractor to complete the work, or for misconduct of the superintendent of streets in approving or accepting the work before it was completed, than by appeal to the board of supervisors, as provided in section 12 of the act of 1872, from which the above extracts are taken; and that by failing so to appeal, they waived the objections here made. (*Emery* v. *Bradford*, 29 Cal. 75; *Nolan* v. *Reese*, 32 Cal. 485; *Chambers* v. *Satterlee*, 40 Cal. 498; *Himmelmann* v. *Hoadley*, 44 Cal. 278; *Dorland* v. *McGlynn*, 47 Cal.

47; *Dyer* v. *Parrott*, 60 Cal. 551; *Boyle* v. *Hitchcock*, 66 Cal. 129.)

2. The second objection to the validity of the assess-ment is, that, as a matter of fact, the superintendent of streets did not accept or approve the work, and that the finding that he did so is not warranted by the evidence.

The law does not prescribe any particular mode or form in which the superintendent shall manifest his approval or acceptance of work done under a street con-tract, nor does it require the approval to be expressed in writing. As the assessment and the warrant thereto attached are not to be made or given until "after the contractor of any street-work has fulfilled his contract to the satisfaction of the superintendent or board of supervisors on appeal" (sec. 9), the assessment and war-rant, in due form, are certainly *prima facie* evidence that the work was completed to the satisfaction of the super-intendent, and that he approved and accepted the same, if they do not imply as much. Moreover, the statute so provides, and appellant's counsel so admits. In addi-tion to this, the plaintiff introduced, from the office of the superintendent, the official certificate of the city and county surveyor, dated on the day the work is alleged to have been accepted, to the effect that he had examined the work of grading in question, and found it to official grade and width; and also introduced an entry in a vol-ume of superintendent of streets' reports kept in the superintendent's office,—a certificate of S. N. Roberts, deputy superintendent of streets, to the effect that the work had been performed and completed in accordance with the terms of the contract. But there was no other evidence on the part of plaintiff tending to prove that the work had been done to the satisfaction of the super-intendent, or that he personally approved and accepted the same, than that he personally made and signed the assessment, diagram, and warrant in due form, and that the warrant was countersigned by the auditor of the city

and county.    And it was admitted that the records of the street department contain no other evidence relevant to the matter of approval or acceptance of the work.

Upon this issue the defendants called L. M. Manzer, who was superintendent of streets during the time the work was being done, and made the assessment in question; and who testified, in answer to questions by defendant's counsel, as follows:—

"Q. Did you in 1879, yourself, personally, inspect the work done under the Jennings-Dyer contract for the grading of Bay Street, between Larkin and Van Ness, whether by Jennings or Buckman? A. I did not; that is, I do not remember that I did. It is not usual for me to do so.

"Q. If you had you would have remembered it? A. I think so."

No other question was asked him.    He was not asked and did not state upon what evidence he became satisfied that the work had been completed according to the contract; nor whether he had personally approved and accepted the work; nor in what way he had expressed or manifested his satisfaction, approval, or acceptance; yet it appears that, personally, he did not examine or see the work, and therefore must have acted upon the representation of others,—probably solely upon the certificates and reports of the city surveyor and the deputy superintendent.    The statute (sec. 25) makes the official certificate of the city surveyor "*prima facie* evidence in all the courts of this state of the truth of its contents." And section 22 provides that deputy superintendents may perform all or any of the duties of the superintendent, "except the acceptance or approval of work done." Under this authority, it would seem that the deputy may superintend the work, measure it, and report all material facts relating to it to the superintendent, though he may not accept or approve the work as completed.    There is no express requirement that the superintendent shall

personally examine, measure, or estimate the work before approving or accepting it; nor do we think such requirement is necessarily implied in the express provision that the work "must in all cases be done under the direction and to the satisfaction of the superintendent." The statute (sec. 25) provides that "the city surveyor shall be the *proper officer . . . . to survey, measure, and estimate the work done under contracts for grading. streets.*" For what purpose is he required to survey, measure, and estimate the work done under grading contracts, and officially to certify to the result, if not to furnish to the superintendent evidence to be considered in judging whether or not the work had been done to his satisfaction? Must the superintendent, in the absence of any express requirement, personally repeat the surveys and measurements made and reported to him by his deputies and by the city surveyor before he can approve or accept the work? We think not; even though it may be, and doubtless is, his duty, as far as practicable, to give his personal attention to all work being done under contract, and to such extent, if possible, as to prevent fraudulent collusion between contractors and his subordinate officers and assistants. And since the law does not require the superintendent to file or record, or even to express in writing, his satisfaction with or his approval of the work, we think the admittedly *prima facie* proof that the work was completed to his satisfaction, and that he personally approved and accepted it, was not overcome by the evidence on the part of the defendants; and therefore, that the finding of the trial court to that effect was justified by the evidence. This conclusion renders it unnecessary to decide whether or not a failure of the superintendent to accept and approve the work personally may be remedied by appeal to the board of supervisors.

3. The third objection to the assessment is, that it was not levied in proportion to benefits, and was there-

fore beyond the constitutional power of the state and municipal governments.

Upon this point the learned counsel for the appellants has submitted an able argument, evincing thorough research and critical examination of all the leading cases and text-writers upon this much debated question; but it comes to this court too late.

On the former appeal of this case, the act of April 1, 1878 (Stats. 1877–78, p. 931), alone was objected to on constitutional grounds, and all such objections were overruled (63 Cal. 397). But as that act made no apportionment of the assessment at all, the question here made did not arise on that appeal. The objection here made is, that the mode of apportionment, viz., in proportion to frontage on the improvement, as authorized by the general street improvement law of 1871–72 (page 804), and for many years before, is unequal, and not in proportion to benefits, and therefore unconstitutional.

Twenty-four years ago these questions were deliberately considered by this court, and decided against the views of the learned counsel for appellants, in *Emery* v. *San Francisco Gas Co.*, 28 Cal. 346, in which it was decided that the legislature may delegate to municipal corporations authority to assess real property to pay the expenses of local improvements, and to apportion the assessment in proportion to the frontage, of the land assessed, on the improvements; and that this is a constitutional mode of the exercise, by the legislature, of the sovereign right of taxation, which does not, in any degree, depend upon the right of eminent domain; nor involve the taking of private property for public use, in the sense of the constitutional prohibition.

We are not aware that any of these propositions have been overruled or qualified; but understand that they have been repeatedly affirmed. (*Emery* v. *Bradford*, 29 Cal. 75; *Taylor* v. *Palmer*, 31 Cal. 250; *Chambers* v. *Satterlee*, 40 Cal. 497; *People* v. *Lynch*, 51 Cal. 19; 21 Am.

Rep. 677; *Whiting* v. *Townsend*, 57 Cal. 515; *Whiting* v. *Quackenbush*, 54 Cal. 306; *Lent* v *Tillson*, 72 Cal. 426.)

We are therefore not at liberty to accede to the earnest and respectful request of the learned counsel for appellants to open and reconsider these questions.

4. The last point made by counsel for appellants is, that the finding that plaintiff was administratrix of the estate of Jennings is not justified by the evidence.

Jennings died testate, and letters testamentary were duly issued to A. E. Buckman in February, 1879. On June 14, 1880, Buckman filed in the probate court his resignation, and on the same day filed in said court his final account. On June 18, 1880, plaintiff filed a petition for her appointment as administratrix. On the 29th of June, 1880, the court ordered her appointment, and letters of administration with the will annexed were issued to her on August 6, 1880.

It appears that, in connection with Buckman's final account, plaintiff introduced as evidence the minutes of the court of June 25, 1880, in the matter of the Jennings estate, relating to and settling that final account. This order is not set out in the transcript, but appellants counsel does not contend that it was not regular; and in support of the action of the court in appointing the plaintiff four days thereafter, it must be presumed to have been a regular order settling the final accounts of Buckman, which implies that Buckman did all things necessary to be done on his part to complete the settlement; and among them, that he delivered up all the estate in his hands to the custody of the court, or to a person appointed by the court to receive it, as required by section 1427 of the Code of Civil Procedure, if such delivery was necessary to complete his settlement. But whether the settlement implies that he delivered up the estate or not, it must be presumed that he did so, if that was necessary to the support of the subsequent action of the court, since there is no evidence to the contrary.

(*Luco* v. *Commercial Bank*, 70 Cal. 340; *Estate of Allen*, 78 Cal. 581.)    The precise point, however, insisted upon by appellant's counsel is, that there was no record evidence that Buckman's resignation had been accepted, or that his letters had been revoked on the 29th day of June, when the plaintiff was appointed; but we think the action of the court shown by the record, as above stated, was equivalent to, and substantially amounted to, an acceptance of Buckman's resignation, and a revocation of his letters testamentary.

The facts of this case are essentially different from those in the case of *Haynes* v. *Meeks*, 20 Cal. 288, cited by counsel for appellant.  In that case it was proved by the records of the probate court that Smith,—the first administrator,—after having acted about three years, during which time he had sold real property by order of the court, filed his resignation on December 31, 1853. Thereupon the court ordered him to turn over the papers and effects of the estate to the public administrator, and to make with him a full settlement before the next term of court, and declaring that when he did so he and his sureties should be released.    At the next term (January, 1854), he presented his report, showing a balance of funds in his hands more than sufficient to pay all the debts of the estate; but the court only approved a part of this report; and then ordered him to pay all the outstanding debts, and to make a final settlement at the next term of court; and at the same time revoked the former order of December 31, 1853, by which he had been directed to turn over the estate to the public administrator.

About four months after these orders (in May, 1855), one Aspinwall applied to be appointed administrator of that part of the estate then unadministered, and in June following was appointed.    Under these circumstances, it was held that the appointment of Aspinwall was void. Field, C. J., said:—

"A resignation is not a matter absolutely in the power of an administrator, to be made at any time he may choose. The statute only confers upon him a conditional right to resign. Its language is, that he may resign, '*provided* he shall first settle his accounts and deliver up all the estate to such person as may be appointed by the court.' *Smith never complied with this condition,* and it nowhere appears that the court ever dispensed with it. The court did . . . . order him to turn over the estate to the public administrator, . . . . but in the following month it vacated the order, and directed him to apply the moneys in his hands to the payment of the outstanding claims. And the subsequent proceedings show *a recognition by the court of his continued existence as administrator of the estate.* . . . . So, too, the allegation by Aspinwall in the petition for his appointment, that the 'administration of Smith had fully ceased and determined,' is without force *against the record evidence to the contrary.*"

In the case at bar it sufficiently appears by the record, as we have seen, that Buckman did comply with the condition precedent to his right to resign, by delivering up all the estate in his hands. Nor is there any record evidence, or any kind of evidence, that he ever acted as executor, or that the court ever recognized him as such after his final settlement on the twenty-fifth day of June. There is nothing whatever tending to dispute the *prima facie* presumption that all the conditions necessary to authorize the court to appoint the plaintiff on the twenty-ninth day of June then existed.

We think the judgment and order should be affirmed.

FOOTE, C., and HAYNE, C., concurred.

THE COURT.—For the reasons given in the foregoing opinion, the judgment and order are affirmed.

Hearing in Bank denied.