[S. F. Nos. 6582-6581.  In Bank.—May 23, 1916.]

FRESNO ESTATE COMPANY (a Corporation), Respondent, v. JAY ALLEN FISKE et al., Defendants; JAY ALLEN FISKE, Appellant.

JAY ALLEN FISKE, Appellant, v. FRESNO ESTATE COMPANY (a Corporation), S. N. GRIFFITH, ANNIE T. GRIFFITH and AMANDA J. FENNELL, Respondents.

FRAUD—COLLATERAL ATTACK—ACTION TO QUIET TITLE—SEPARATE PROPERTY—IMMATERIAL FINDING.—In an action by a son as heir at law of his deceased father to set aside a judgment, rendered in an action by his mother against the guardian of himself while a minor, to the effect that certain property was her separate property, where it appears that the husband deeded the property to his wife and that she later made a deed to him, which he abstracted from her safety deposit box before delivery, the judgment cannot be set aside for fraud based upon alleged perjured testimony given in support of a finding as to the ownership of the money with which the property was originally purchased because such finding is immaterial.

ID.—EXTRINSIC FRAUD.—In a collateral attack upon a judgment the fraud necessary to set it aside must be extrinsic fraud such as to prevent the litigants from having a fair submission of the controversy.

ID.—PERJURED TESTIMONY—METHODS OF RELIEF—MOTION FOR A NEW TRIAL—APPEAL FROM JUDGMENT.—Where a trial of issues in any case is had, the parties must be prepared to meet and expose perjury then and there, and if a party fails to do so and the perjury accomplishes its malign purpose, the only means of correcting the wrong are to be found in a motion for a new trial and in an appeal from the judgment.

ID.—OMISSION OF PROPERTY FROM FINAL ACCOUNT OF ADMINISTRATRIX IMMATERIAL.—The neglect of the widow of decedent, when acting as administratrix of his estate, to include in her final account the property which she claimed as her separate property, although it stood of record in his name, and which she did not list in the inventory, is immaterial in an action based upon fraud to set aside the judgment in the former action that the property was the separate property of the widow.

ID.—COLLUSION—EMPLOYMENT BY GUARDIAN OF INDEPENDENT COUNSEL. Collusion is not established by proof that the guardian of a minor child, made a party to an action to establish the ownership in the plaintiff, widow of her deceased husband, of property standing in his name at the time of his death, was selected by the

plaintiff, where it appears that the guardian employed independent counsel, who cross-examined the plaintiff fully, and conducted the litigation as they deemed proper, and were convinced at the time that the testimony of the plaintiff was true, and that there was no evidence available with which to meet it, and that there was corroboration of her testimony by other witnesses.

ID.—COLLUSION NOT SHOWN HEREIN.—In this case the facts are not such as to show that the suit to quiet title against the guardian was collusive or fraudulent.

ID.—GUARDIAN AND WARD—RESIGNATION OF GUARDIAN—APPOINTMENT OF GUARDIAN.—Where the plaintiff in an action to quiet title against the guardian of her minor son resigned as guardian on a certain day, and on the same day the succeeding guardian filed his petition for letters of guardianship, and on the following day the court signed an order appointing the petitioner as guardian and signed another order accepting the resignation of the mother, approving her accounts and discharging her as guardian, which order was not filed until the following day, and the second guardian was served with summons in the action to quiet title on the same day, the judgment is not void on its face because the resignation of the mother as guardian took effect on the day on which the order was signed, and the succeeding guardian became such on the same day and was the legal guardian when the summons was served on him on the following day.

ID.—PARENT AS PLAINTIFF—SERVICE OF SUMMONS.—Where the mother of an infant defendant is the plaintiff in the action, she need not be served with summons.

ID.—ORDER TAKES EFFECT FROM TIME OF PRONOUNCEMENT—FAILURE OF CLERK TO FILE OR ENTER JUDGMENT.—The validity of an order takes effect from the time it is pronounced, and the failure of the clerk to file the papers or enter the judgment does not delay or defeat the court's pronouncement.

ID.—PRESUMPTION IN FAVOR OF ORDER APPOINTING GUARDIAN.—As the order appointing the succeeding guardian operated as an acceptance of the resignation of the former guardian, it will be presumed in favor of the second appointment that the property of the ward was delivered up at the time the order was made as required by section 1427 of the Code of Civil Procedure.

ID.—CONSTRUCTION OF CODE SECTIONS.—The provisions of section 1801 of the Code of Civil Procedure concerning guardians are not limited by the general language of section 1808 of the Code of Civil Procedure.

ID.—POWER OF COURT TO APPOINT GUARDIAN—LIMITATIONS ON SUCH POWER.—The requirements of a previous accounting and delivery of property to a third person may not be attached to the court's power to accept a resignation of a guardian and to confer full powers of guardianship upon another.

ID.—APPEARANCE BY GUARDIAN—SERVICE OF SUMMONS ON MINOR—
TRIAL NOT PREMATURE.—Where the guardian filed an answer in a
suit to which he was a party, the trial of the case prior to the
expiration of ten days following the service of summons on the
minor is not premature, because the general guardian has power to
appear for his infant ward independently of the service of sum-
mons upon the ward.

NEW TRIAL — NEWLY DISCOVERED EVIDENCE—FACTS RECOLLECTED BY
WITNESS AFTER DECISION.—A new trial will not be granted upon
the ground of newly discovered evidence where it appears that the
witness whose alleged testimony constitutes the newly discovered
evidence testified at the trial of the case in which the judgment
attacked in this action was rendered, and was in attendance upon,
but not examined as a witness in, this action, notwithstanding that
no questions touching the matters now recollected by him were put
to him when on the stand in the previous case, and that during
the present trial, when questioned, he did not recall the circum-
stances but did so after its conclusion, since appellant knew that
the witness was present at the occurrence whose circumstances he
now recalls and could have examined him concerning them if he
had chosen to do so.

ID.—FALSE TESTIMONY IN FORMER ACTION — DUE DILIGENCE.—The
action of the trial court in refusing to grant a new trial upon the
ground of newly discovered evidence based upon the affidavit of
the mother of plaintiff that she testified falsely in the previous
action against himself while a minor, will not be disturbed where
plaintiff, believing that his mother would be a witness for his
adversaries, nevertheless knew that she of all living persons had
the most complete knowledge concerning the matters about which
he was seeking information, but did not call her as a witness or
take her deposition.

ID.—NOT FAVORED BY COURTS—ABUSE OF DISCRETION BY TRIAL COURT.
Motions for a new trial based upon the ground of newly discovered
evidence are not favorably regarded by courts, and appellate tri-
bunals do not disturb the action of a trial court in refusing to
grant such a motion, except where it clearly appears that there
has been an abuse of discretion.

APPEALS from orders of the Superior Court of Fresno
County refusing a new trial.   S. E. Crow, Judge presiding.

The facts are stated in the opinion of the court.

Gavin McNab, Everts & Ewing, R. P. Henshall, and Luther
P. Elkins, for Appellant.

N. C. Coldwell, F. H. Short, F. E. Cook, W. S. Goodfellow,
and Goodfellow, Eells, Moore & Orrick, for Respondents.

MELVIN, J.—These two actions were consolidated and tried together. The appeals are from the orders denying the motion by Jay Allen Fiske in each case for a new trial.

The Fresno Estate Company sued to quiet title to certain real property in Fresno County. Jay Allen Fiske answered and filed a cross-complaint, which is substantially the same as the bill in equity, by the filing of which the second suit was commenced. The corporation answered both the cross-complaint and the bill in equity. By his pleadings Jay Allen Fiske sought to set aside and to avoid for extrinsic fraud the final decree of distribution in the estate of John D. Fiske, deceased, or that part of it which purported to distribute the real property of said estate as the community property of John D. Fiske and Amanda J. Fiske, his wife; and to vacate, set aside, and avoid for extrinsic fraud the final decree in a suit to quiet title to said property; and to declare the Fresno Estate Company a trustee of a third interest in said property for said Jay Allen Fiske.

It appears without question that Jay Allen Fiske is the son of the late John D. Fiske and Amanda J. Fiske, his wife; that subsequent to John D. Fiske's death his widow married Theodore Marceau, was divorced from him, and married a Mr. Fennell. From the findings the following facts, among others, appear:

John D. Fiske died in Fresno County, July 26, 1890, leaving as heirs his widow, Amanda J. Fiske, and two minor children, Jay Allen Fiske and Mercie Jean Fiske. The last-named child died during minority. On July 25, 1889, John D. Fiske executed to his wife, Amanda, a deed conveying the property here in dispute to her. In the deed was contained a recital of the consideration as ten dollars and the further sum of twenty-eight thousand dollars advanced to him by his wife in July, 1885, out of her separate property. In the deed of conveyance the premises were described as the separate property of Amanda J. Fiske. On October 14, 1889, John D. Fiske executed another deed with similar recitals regarding the consideration and the separate character of the property, and this deed contained the statement that it was made to correct the former one. Each deed was acknowledged before a notary public and was duly recorded shortly after its execution. The purpose of John D. Fiske in executing these instruments was to hinder, delay, and

defraud a creditor, one A. H. Cummings. The court also found that by these deeds Amanda became the owner and seized in fee, as of her separate estate, of all of the real property referred to in the pleadings, and so remained continuously until 1897 when she conveyed title to the Fresno Estate Company. There were further findings that John D. Fiske never after the execution of the said deeds owned any interest in the land, and that Jay Allen Fiske had acquired no interest therein either as heir or otherwise.

The court also made findings that on February 24, 1890, Amanda J. Fiske, in anticipation of her possible death, prepared a deed of conveyance of the property to her husband and deposited it in his safe in a compartment to which she had exclusive right of access; and that in June, 1890, domestic difficulties having arisen between the husband and wife, the former broke open this compartment, abstracted the deed therefrom, and caused it to be recorded. Mrs. Fiske subsequently instituted a suit for divorce. In her complaint she alleged, among other things, the nondelivery of the deed and prayed for its annulment. John D. Fiske died during the pendency of the action for divorce. Thereafter Mrs. Fiske was appointed administratrix of the estate of John D. Fiske, deceased, and, as the court finds, she did not conceal the existence of the property, although she did not include it in the inventory filed in the course of the probate proceedings. The petition for letters of administration contained the following language:

" 'Your petitioner is informed and be-
'lieves that certain real estate in Fresno
'County, California, stands of record in the
'name of said deceased, and that the
'rents, issues and profits of the same
'amount to fifteen hundred ($1,500) dol-
'lars per month, but that as your pe-
'titioner is informed and believes, said
'real estate was not at the time of the
'death of the said deceased the property
'of the said deceased; and that the value
'of the said property is not known to your
'petitioner.' "

On April 6, 1892, the final account of Mrs. Fiske as administratrix was settled and allowed and a decree of final dis-

tribution of the estate was given and made, whereby all of
the property of the estate was declared and adjudged to be
community property and was distributed, one-half to her
and one-quarter to each of the two minor children. Mrs.
Fiske was thereupon discharged as administratrix.

In August, 1890, as the court finds, Mrs. Fiske was ap-
pointed guardian of the persons and estates of her two minor
children, and she duly qualified and acted as such guardian
until April 6, 1892. On that day she resigned and her
resignation was accepted and she ceased to be such guardian.

On that same day (so the court finds), upon petition of one
W. L. Fisher and upon request of Mrs. Fiske and of her
mother, who was the wife of said Fisher, he was duly ap-
pointed guardian of the persons and estates of the minors,
duly qualified as such, and served in that office until some
time in November, 1892. On April 7, 1892, the mother of
the minors, who had by marriage become Amanda J. Marceau,
commenced an action against the said minors and W. L. Fisher,
as their guardian, alleging in her complaint that she was
the owner of the real estate, the title to which is here in
dispute, and praying for a decree quieting her title thereto.
There is a finding that summons in this action was duly and
personally served upon each of the minors and upon the
guardian, Mr. Fisher, and that through their said guardian
the minors answered denying the allegations in their mother's
complaint and averring that title to said property was in
them. This action was tried in the superior court on April
12, 1892, the guardian and his wards being duly represented
by counsel. As a result of the trial the court adjudged that
the instrument, in form a deed of conveyance from Amanda
J. Fiske to John D. Fiske, her husband, had never been de-
livered, but that he had abstracted it from his wife's private
compartment in his safe. Mrs. Marceau's title to the land
in dispute was quieted. In the case now at bar the court
found that the judgment in that action quieting title has
ever since its entry remained in full force; that the action
was tried on its merits; that the decision and judgment were
based upon competent testimony; that the action was fully
and fairly tried; that all available defenses were presented to
the court by counsel for the defendants; and that the judg-
ment given in the year 1892 estops Jay Allen Fiske to claim

or assert any interest in the premises adverse to that of his mother or of the Fresno Estate Company.

In response to certain allegations contained in the pleadings of Jay Allen Fiske the court found that at all times following the death of John D. Fiske, his widow in good faith believed, as the fact was, that the property now in controversy was her own separate estate; that she made no false statements in the matter of the estate of John D. Fiske nor concealed from the court any facts affecting the interests of her children nor committed any fraud upon the court; that throughout the probate proceedings the minor children were represented by Mr. R. A. King under appointment of the court, and they were not deprived of any rights in said probate proceedings; that the decree of the probate court was free from all fraudulent influence; that she commenced and prosecuted in good faith the action of April, 1892, to quiet title; that at the trial of said action she proved that there had been no lawful delivery of the purported deed supposedly granting the title to her husband; that upon the trial of that case Amanda J. Fiske introduced letters written by John D. Fiske and testimony regarding statements made by him to the effect that the property had been purchased with Mrs. Fiske's separate moneys and that he claimed no interest therein; that Mrs. Fiske also testified at that trial that the said property had been purchased by money which was her separate property derived from gifts made to her by her mother and various other persons, but it is found, upon testimony adduced at the trial of this case that the statements regarding the gifts were absolutely false and that similar false testimony was given in that action by Mrs. Fisher. The court in the trial of this action found that the funds used in the purchase of the land here involved were in fact furnished by John D. Fiske. It was found, however, that the false testimony was immaterial and did not affect the judgment in the former action in favor of Mrs. Fiske and against her children.

There was a finding that Mrs. Fiske induced her stepfather, Mr. Fisher, to come from New York to act as guardian of the minor children, but that there was no fraud or fraudulent intent upon her part or that of Fisher. The court further found that Fisher, as guardian, and not Mrs. Fiske, paid the attorneys who had represented the minors in the probate

and guardianship proceedings and also in an action thereto-
fore prosecuted by her against her minor children and herself
as administratrix of the estate of John D. Fiske, deceased.

It was found that W. L. Fisher, as guardian, acted in good
faith and not as a passive instrument in Mrs. Fiske's hands.
There were elaborate findings against the theory of appellant
that Mrs. Fiske and Mr. Fisher had conspired to defraud the
minor children and that the suit against the said minors was
not a genuine contest, it being found, on the contrary, that
all of the proceedings and statements were in good faith
except the said false statements regarding the source of the
money by which the property was originally purchased by
Mr. Fiske.

There were findings that the corporation, Fresno Estate
Company, was formed in the course of a transaction by
which Mrs. Fiske sought a loan from C. F. MacDermott.
He organized said corporation and she transferred all of
the property here in suit to it, taking as consideration for
said transfer substantially all of the shares of the capital
stock, which she then pledged to MacDermott as security for
a loan. It was found that MacDermott and the original
stockholders had no knowledge of the claims of Jay Allen
Fiske, and that they dealt with the said Amanda J. Fiske
in good faith; that subsequently she sold all of the shares to
the present stockholders, who were innocent purchasers and
were persons who bought their stock in reliance upon the
judgment entered in April, 1892; and that to grant the de-
manded relief to Jay Allen Fiske would be inequitable to
the corporation and to its stockholders. There were full
and adverse findings responsive to Jay Allen Fiske's allega-
tions with reference to alleged frauds and concealments
perpetrated by his mother in the probate proceedings and
to his contentions that W. L. Fisher had not been duly
appointed his guardian; and that Jay Allen Fiske had not
been represented by guardian, by attorney or otherwise in
the suit brought against him to quiet title to the land in
which he now claims an interest. According to further find-
ings Jay Allen Fiske could not present proof of extrinsic
fraud in the suit to quiet title, or that he was prevented from
presenting his defense thereto, but he could establish the
fact that Mrs. Fiske falsely swore that the property was
bought with money derived by her from her relations and

that it was always equitably hers. The findings contained the further concession that Jay Allen Fiske could prove that the purpose of the conveyance of the property from his father to his mother was to defeat A. H. Cummings from realizing upon a possible judgment which he might obtain against John D. Fiske. There was a repetition in substance of the earlier finding that there was no delivery of the deed of February 24, 1910, in which Mrs. Fiske was apparently the grantor and her husband the grantee.

We have found it necessary thus to reproduce rather fully the findings of the superior court because of the many angles of attack upon them and the many lines of defense.

Appellant's first contention is that the real property in question was the separate property of John D. Fiske, and at his death a one-third interest therein descended to his son. This is conceded to be the crucial point in the litigation, because, say counsel for appellant, "If the property did not belong, as separate property, to John D. Fiske at the time of his death, we are ready to concede that Jay Allen Fiske is without any case." The lower court found that the property was acquired by John D. Fiske after his marriage, and that it was community property until it was conveyed to his wife, when it became and continued to be her separate property until a time subsequent to her husband's death. This finding is attacked upon the ground that it is contrary to the solemn stipulation of the parties that on March 31, 1887, John D. Fiske was "the owner in fee simple and in the possession of the land." This admission, say counsel, establishes beyond question that the findings in the case of *Marceau* v. *Fiske* to the effect that the property in question was Mrs. Marceau's separate property bought by John D. Fiske in her name with his moneys are untrue—that this is the very basis of the judgment cutting off the interests of the minors, and because of its falsity it must be disregarded. But it must be remembered that the judgment in *Marceau* v. *Fiske* was based upon the finding that Mr. Fiske had taken the deed from his wife's compartment in the safe without her knowledge or consent and that there had been no delivery of that instrument which purported to evidence his title. That was the one essential matter before the court—was there a delivery or not? His reason for the original conveyance to his wife was immaterial, and it is equally immaterial whether the

property was separate or community property prior to such transfer. John D. Fiske, in December, 1889, had written to the German Savings and Loan Society of San Francisco a letter containing the declaration that this property had been purchased by him with money given to his wife by her mother. In the two deeds executed by John D. Fiske in his wife's favor, dated respectively July 25, 1889, and October 14, 1889, he had declared that part of the consideration of each deed was twenty-eight thousand dollars advanced to him by Amanda J. Fiske out of her separate property. Respondent asserts that the finding in the suit to quiet title could be supported by the evidence of these recitals, eliminating all of the false testimony given and procured by Mrs. Fiske. But whether this position be correct or not, we think the testimony of Mrs. Fiske as to her loan to her husband was not of controlling weight. She sued to quiet title not pleading her source of ownership, nor the advancement of any money by her for the original purchase. The answer averred that John D. Fiske held legal title to the property at the time of his death, and that as his sole heirs at law the minors, defendants in the suit, succeeded to the title. It sets up the infancy of the heirs and prays strict proof of the matters alleged in the complaint. The source from which John D. Fiske originally received the purchase money was not a determination necessary to the decision of that case, and the finding based upon the false testimony was clearly not material.

But appellant's counsel say that the fact of nondelivery, found in *Marceau* v. *Fiske,* was based upon Mrs. Marceau's testimony, and that evidence concerning the source of the original purchase money was material as indicating the probability or improbability of her statement that she had never delivered the deed to her husband Mr. Fiske. It is the theory of appellant's counsel that the court would never have depended upon her statements regarding nondelivery had it been apprised of her perjury regarding the supposed gifts from her kinsfolk of the purchase price of the property. To support such a contention would authorize the reversal of a judgment which has long since become final, upon considerations of fraud not extrinsic. Even granting that the decree in *Marceau* v. *Fiske* was based upon Mrs. Marceau's false testimony, it may not be set aside in this action for that

reason.   There was no extrinsic fraud by which the unsuccessful litigants in that case were prevented from having a fair submission of the controversy.   True the plaintiff swore falsely, but where a trial of issues in any case is had, the parties must be prepared to meet and to expose perjury then and there.   If one fails so to do and the perjury accomplishes its malign purpose, the means of correction of the wrong are to be found in a motion for a new trial and in an appeal from the judgment.   This, in its practical operation, is often a harsh rule, but if it were not rigidly enforced, the mischiefs which would arise from the disturbing of apparently final judgments after years of dependence upon property rights established by them would be much worse than the enforcement of the judgments based upon the false swearing.   In any view of the matter we cannot see that the false stories told by Mrs. Marceau and her mother amounted to extrinsic fraud.   Therefore, we must hold that we may not upon the ground of such fraud nullify the effect of that judgment. (*Pico* v. *Cohn*, 91 Cal. 129, [25 Am. St. Rep. 159, 13 L. R. A. 336, 25 Pac. 970, 27 Pac. 537] ; *Fealey* v. *Fealey*, 104 Cal. 354–359, [43 Am. St. Rep. 111, 38 Pac. 49] ; *Hanley* v. *Hanley*, 114 Cal. 690–693, [46 Pac. 736] ; *Steen* v. *March*, 132 Cal. 616, 617, [64 Pac. 994] ; *United States* v. *Throckmorton*, 98 U. S. 61, [25 L. Ed. 93] ; *French* v. *Phelps*, 20 Cal. App. 101–111, [128 Pac. 772].)   Counsel devote many pages of their briefs to an attack upon the testimony of Mrs. Marceau by which was established the nondelivery of her alleged deed to her husband.   They argue that her statements regarding the original purchase of the property having been false, this court should now declare that her account of the nondelivery was worthy of no belief.   The conclusive answer to this contention is that this is not an appeal from the judgment in the case of *Marceau* v. *Fiske.*

We do not see that the omission by Mrs. Fiske (Marceau) to include the property here in dispute in the final account of her administration of the estate of John D. Fiske has any proper place in this controversy.   If the property was her own, it was not entitled to be so included.   In her petition for letters she had called the court's attention to property standing in the name of the decedent but not belonging to him.   Her final account was in harmony with her expressed views upon the subject of the ownership of the realty.

Appellant insists that the case of *Marceau* v. *Fiske* was sham, because the defense was dominated by the plaintiff in the action; that it was a collusive and simulated controversy; and that it was brought upon allegations known by the plaintiff to be false.

It is true that Mr. Fisher, who succeeded Mrs. Marceau as guardian, came to California at her request, but it is also true that the judge of the superior court who made the appointment knew of this fact and of their relationship. If Mrs. Marceau was in truth the owner of the property or believed that she was (and the court below found upon competent evidence that she so believed), there was nothing sinister nor fundamentally fraudulent in her seeking to have someone appointed to represent the minors to the end that a fact which she believed to exist might be judicially determined. Messrs. Thompson and King were chosen as attorneys for the guardian and the minors, and concededly the selection was made by Colonel Marceau at his wife's request, but it does not appear from the record that they, or Mr. Thompson, who gave his personal attention to the litigation, failed in any duty which they or he owed their clients. Mr. King had been guardian *ad litem* for the children by virtue of the court's appointment, and afterward by similar selection had been employed to represent them in the probate proceedings and had objected in their behalf to many items in their mother's account as administratrix. Naturally Mr. Fisher, who was not familiar, it appears, with forms of law, acted upon the advice of his counsel. He testified that in the conduct of the litigation he did what he thought was proper and right as guardian.

Mr. W. P. Thompson, who actually conducted the trial on behalf of the guardian and the minors, said, as a witness in the present case: "I cross-examined the witnesses and became convinced that the facts were as testified to. There was no understanding between me and Mrs. Marceau or Fisher that the matter was not to be appealed or that I should not act further in the case. After the trial that evening Mrs. Marceau seemed piqued because I cross-examined her so severely. She made some remark about my being mean to her; something of that kind, when I left the room after the court adjourned." Later the following questions were asked and the appended answers were made by Mr. Thompson:

"Q. Now, in examining the case, did you consider if she succeeded in proving that deed wasn't delivered she would establish her case anyway?

"A. She certainly seemed to establish it that night by the testimony of her mother and the recorder.

"Q. You knew of those matters yourself before the trial?

"A. Yes, sir; because I had been more or less familiar with the troubles of Mrs. Fiske and her husband.

"Q. Did you know whether or not any person could testify on that subject except Mr. Fiske and Mrs. Fiske?

"A. I did not—didn't know of anyone that could testify.

"Q. Therefore, it was no use looking for evidence on a subject of that kind when none could be found?

"A. Didn't seem to be.  We made a serious defense in that case.

"Q. Whether or not there was any collusion between the parties, you defended the case to the best of your ability, and you think that the woman succeeded and that the judge was justified in finding in her favor?

"A. That was my opinion at that time."

But independently of Mr. Thompson's recollection, which naturally was dimmed by the passage of many years, the record of the cross-examination of Mrs. Marceau at the trial of the suit to quiet title shows that he went quite fully into the matters adduced upon direct examination and questioned her minutely with reference to her life with Mr. Fiske, regarding the sources of the money invested by them in Fresno and elsewhere and upon other pertinent subjects.  We cannot say that the court was not justified in finding in this case that the guardian and his counsel acted in good faith in the conduct of that litigation.

It is to be remembered, too, that Mrs. Marceau was supported in some of the matters to which she testified.  Mr. Fiske's former secretary, Mr. Donohue, corroborated her in the statement that she was accustomed to keep her papers in a separate compartment in Mr. Fiske's safe.  Mr. Henry, another employee of Mr. Fiske, testified to the same fact, and related under oath how on one occasion he assisted his employer in breaking open this compartment.  The incident, he said, occurred shortly before Mr. Fiske's death and at a time when Mrs. Fiske was absent from Fresno, where they resided.  On that occasion, witness said, Mr. Fiske took certain papers

and some bracelets from the strong box.   The recorder of the
county, Mr. Beall, speaking of the last deed recorded by Mr.
Fiske a few weeks before his death, said that he had been re-
quested by Mr. Fiske to hold it and put it of record at any
time any papers should come in to his office from Mrs. Fiske.
This he declined to do, but agreed to hold the deed and
to place it of record at any time on request of Mr. Fiske.
Shortly after Mrs. Fiske's return Mr. Fiske met the recorder
and told him to record the instrument immediately.   He tele-
phoned to a deputy and the deed was recorded a few minutes
before the filing of the *lis pendens* in the divorce suit.

It appeared in evidence at the trial of *Marceau* v. *Fiske*
that Mrs. Fiske had earlier made another deed in favor of her
husband, but had not delivered it.   Her husband obtained it
and upon discovering its absence from her papers she searched
among his documents, found the purported deed and cut her
signature from it.   Later, upon her husband's demand, she
executed the second instrument.

It is also to be remembered that in the case at bar the
burden was upon Jay Allen Fiske to show extrinsic fraud
vitiating a decree solemnly entered more than two decades
before the hearing.   That decree was entered after a trial
before a chancellor having full power and bounden duty to
protect the interests of the minors.   We cannot say that he
acted despite evidence conclusively establishing collusion nor
that the proof in the case now before us was such as should
have compelled the conclusion that the suit to quiet title was
false and fraudulent.

We need examine only one other contention made in behalf
of appellant, and that is the assertion by his counsel that for
technical reasons the judgment in *Marceau* v. *Fiske* was and
is void on its face.   It is argued that at the time of service
of summons upon Jay Allen Fiske there was no service upon
his living parent; that the order appointing W. L. Fisher, his
guardian, was void; and that therefore the service amounted
to nothing because it was not made in accordance with the
provisions of section 411 of the Code of Civil Procedure.   On
April 5, 1892, Amanda J. Fiske filed her resignation as guard-
ian of her minor children.   On the same day W. L. Fisher
filed a petition praying that he be appointed their guardian.
On April 5th Mrs. Fiske's account was also filed and ap-
proved.   On April 6th the court made an order appointing

Mr. Fisher and letters of guardianship issued to him. On April 6, 1892, the court signed an order accepting the resignation of Mrs. Fiske, approving her accounts, and discharging her as guardian. The "order discharging guardian" was dated April 6th, but was not filed until the 7th. Jay Allen Fiske was served with summons on the 7th of April.

It is insisted that a ward may not have two general guardians at one time, and that the appointment of Fisher prior to the filing of the order discharging Mrs. Fiske was therefore void; that the statute permitting the appointment of a guardian *ad litem* when there is a general guardian is an exception which proves the general rule that there may not be two general guardians at one and the same time; and finally, that Jay Allen Fiske was not given time to answer, because the trial occurred before the expiration of the ten days allowed by law for an appearance and answer after service of summons.

The mother being the plaintiff in the litigation, it was not necessary that she should be served with summons. (*Brown* v. *Lawson,* 51 Cal. 615–617.) But she was not her son's guardian on April 7th. The acceptance of her resignation occurred when Mr. Fisher was appointed on the 6th. (*Jennings* v. *Le Breton,* 80 Cal. 8–17, [21 Pac. 1127]; *In re Allen,* 78 Cal. 581, [21 Pac. 426].) Upon her resignation being accepted she was discharged from office, but not from liability to account or liability on her bond. Discharge from office may antedate the settlement of account. (*Graff* v. *Mesmer,* 52 Cal. 636; *Estate of Clary,* 112 Cal. 292, [44 Pac. 569]; *Title Guaranty and Surety Co.* v. *Slinker,* 35 Okl. 128, [128 Pac. 696].)

Moreover, when Mr. Fisher was served with summons he was possessed of letters issued under a judgment of a court of general jurisdiction. Such judgments may not be collaterally attacked. Even if we say that there is complete analogy between probate and guardianship matters, and that a guardian like an administrator must deliver up the property of his wards and have his resignation accepted before a new guardian may be appointed, it must be presumed that such delivery was made (*Barboza* v. *Pacific Portland Cement Co.,* 162 Cal. 36–41, [120 Pac. 767]), and this in spite of the entry of the order of the 6th of April on the 7th. But that order was effective on the 6th when it was signed. The validity of such an order does not depend upon the day of its entry. An

order or decree of court takes effect from the time it is pronounced, and the failure of the clerk to file the papers or enter the judgment does not delay or defeat the operation of the court's pronouncement. (*In re Cook*, 77 Cal. 220, [11 Am. St. Rep. 267, 1 L. R. A. 567, 17 Pac. 927, 19 Pac. 431] ; *In re Cook*, 83 Cal. 415, [23 Pac. 392] ; *In re Newman*, 75 Cal. 213–221, [7 Am. St. Rep. 146, 16 Pac. 887] ; *Niles* v. *Edwards*, 95 Cal. 41, [30 Pac. 134] ; *In re Clarke*, 125 Cal. 388–395, [58 Pac. 22] ; *Estate of Wood*, 137 Cal. 129–133, [69 Pac. 900] ; *Crim* v. *Kessing*, 89 Cal. 478–488, [23 Am. St. Rep. 491, 26 Pac. 1074].) There is nothing in *Brownell* v. *Superior Court*, 157 Cal. 703, [109 Pac. 91], in conflict with this conclusion. The court was there concerned with the question, "When is an order of partial distribution 'taken' within the meaning of section 473 of the Code of Civil Procedure?" It was held that it was only "taken" when duly entered. This court carefully limited the effect of the decision in that case for Mr. Justice Shaw, who delivered the opinion, said: "Nor are we concerned with the effect of an announcement of a decision or order against one who was then present." It will be presumed in support of the order appointing Mr. Fisher as guardian that the oral order directing Mrs. Fiske to deliver the property of the wards was made before said appointment. It will be presumed that the oral order discharging Mrs. Fiske was made on the day of its date, April 6th. The order recites that "she has delivered up the property of said estate in her hands to W. L. Fisher, her successor in said guardianship, in accordance with a former order . . . appointing Fisher as guardian." Respondent's counsel contend, and we think correctly, that "Thus it appears that the oral order appointing Fisher and the oral order that Mrs. Fiske deliver the ward's property to him were made at the same time ; they were synchronous ; they were in fact parts of the same order. As the order appointing Fisher operated as an acceptance of Mrs. Fiske's resignation, it will be presumed that the property was delivered at the time that order was made. This accomplished every purpose of the requirement of section 1427 that she should 'first' turn over the property."

The basis of appellant's argument against the validity of the appointment of Mr. Fisher as guardian is that Mrs. Fiske's resignation and the installation of a successor to the resigning guardian are governed by the provisions of section 1427

of the Code of Civil Procedure, relating to the resignation of an administrator or executor after having settled his account and delivered up the property of the estate to a person appointed by the court to receive it. It is true that by section 1808 of the Code of Civil Procedure, the provisions of the title relative to the estates of decedents are made applicable as far as possible to proceedings under the chapter on guardians; but by section 1801 of the same code the court is given complete discretion to accept a guardian's resignation and appoint his successor. Clearly the terms of this special provision regarding guardians are not to be construed as being limited by the general language of section 1808. It has been held that the removal of one guardian and the selection of another may be accomplished without notice to the ward. (*In re Tilton,* 15 Cal. App. 244–251, [114 Pac. 594], a case in which a petition to have the cause heard in the supreme court was denied.) Upon like reasoning it may be said that the requirements of previous accounting and delivery of property to a third person may not be attached to the court's power to accept a resignation of a guardian and to confer full powers of guardianship upon another. We are convinced, therefore, that Mr. Fisher was the duly appointed and qualified guardian of the minors, with full authority to represent them in the case of *Marceau* v. *Fiske.*

As Fisher was guardian and filed an answer, the trial was not premature merely because it occurred before the expiration of ten days following the service of summons on Jay Allen Fiske. The general guardian had the power to appear for the infants even independently of the service of summons upon them. (*Redmond* v. *Peterson,* 102 Cal. 595–599, [41 Am. St. Rep. 204, 36 Pac. 923].)

Our conclusions upon the matters discussed above obviate the necessity of discussing the court's findings that the Fresno Estate Company and its stockholders are innocent holders of the title to the land without notice of the asserted equities of the appellant.

Appellant's motions for a new trial based upon the ground of newly discovered evidence were properly denied. The affidavit of S. L. Hogue, the notary public, who acknowledged the first deed in which Amanda J. Fiske was the grantor and her husband the grantee (the one from which she cut her signature) is to the effect that there was a solemn and formal de-

livery of that instrument by Mrs. Fiske to her husband in the presence of affiant. But witness Hogue was examined in the action to quiet title and was in attendance upon the trial of this case, although not put upon the stand. It is true that no questions were asked of him when he was on the stand in the earlier case, tending to disclose his knowledge of the alleged delivery, but it does appear from the affidavit of Jay Allen Fiske that the notary was examined by him or on his behalf before and during the trial, and Hogue then said he remembered no facts concerning delivery of either of the deeds in which Mrs. Fiske's name appeared as that of the grantor. After the trial and after appellant had urged him to try to recall the facts, Hogue said that they had come to his memory, and that he then recollected the delivery described in his affidavit subsequently filed in support of the motion for a new trial. It does not appear that with proper urging Hogue's memory might not have been stimulated to recall the fact of delivery when he was interviewed during the progress of the trial. Nor did his statement made during the trial that he forgot the incidents surrounding the making of the deeds excuse the appellant for failure to put him upon the stand. Appellant knew as well then as at any subsequent time that Hogue was present when the deed was made and that he had some knowledge of the surrounding circumstances. This court, many years ago, took an emphatic stand against the granting of a new trial upon the tardy production of evidence not available at the trial because of the "absolute forgetfulness" of a witness. (*Moran* v. *Abbey,* 63 Cal. 56.) If appellant chose to accept Hogue's unsworn statement that he did not remember the actions of appellant's parents at the time of the execution of the deed, and, depending upon it, elected to refrain from calling the notary as a witness, he cannot with very good grace question the discretion of the court exercised in refusing to grant a new trial upon the showing of the belated recollection of the witness.

Without going into the details of Mrs. Fennell's affidavit (Fennell being the present name of the former Mrs. Fiske), it is sufficient to say that by it she admits the making of many false statements at the trial of the case of *Marceau* v. *Fiske.* Appellant's excuse for his failure to produce his mother as a witness at the trial is that he and she were unfriendly to each other and he had been told by her that she intended to be a

witness for his adversaries.   But at all times he knew that she, of all living persons, had the most direct knowledge regarding the transactions about which he was seeking information.   He might have taken her deposition very easily, but he did not do so.   The principal effort of appellant and his counsel, throughout the trial, was to prove that his mother was a perjurer and the spoliator of himself and his sister.   He cannot well complain if the court, in the exercise of a discretion, wisely conferred by law, refused to accept her affidavit as of sufficient importance to justify the granting of the motion for a new trial.   We cannot say that the newly discovered evidence was not such as might have been produced at the trial by the exercise of due diligence.   It requires no citation of authority to support the rule, which indeed is conceded by counsel for appellant, that motions of this kind based upon the ground of newly discovered evidence are not favorably regarded by courts, and that appellate tribunals do not disturb the action of a trial court in refusing to grant such a motion except where it clearly appears that there has been an abuse of discretion.   We find no such abuse in the present case.

The orders are affirmed.

Henshaw, J., Shaw, J., Sloss, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.