[Civ. No. 18143.   First Dist., Div. Two.   Feb. 26, 1959.]

DEPARTMENT OF MENTAL HYGIENE, Appellant, v. MARIAN MANNINA, as Administratrix, etc., Respondent.

·Edmund G. Brown and Stanley Mosk, Attorneys General, and Wiley W. Manuel, Deputy Attorney General, for Appellant.

Machado, Feeley & Machado and John H. Machado for Respondent.

DOOLING, J.—Plaintiff, Department of Mental Hygiene, appeals from an order granting a new trial.

On March 3, 1942, Albina Serdock was committed to a state hospital as an insane person and remained so hospitalized until her death on May 18, 1956. Her estate is in probate and appellant filed with the administratrix a creditor's claim for $4,521.17 for the balance claimed to be due for her care and maintenance. The administratrix approved the claim for $120 only and this suit upon the claim was then filed.

The records of appellant introduced in evidence establish that the charges fixed by appellant for the care and maintenance of the decedent pursuant to section 6651, Welfare and Institutions Code, were as follows: $90 per month for the period January 1, 1951 to February 28, 1953; $100 per month from March 1, 1953; $111 per month from March 1, 1954; $118 per month from January 1, 1955; and $122 per month from January 1, 1956.

In June 1944 the probate court on petition of the Department of Institutions made an order directing the guardian of the estate of Albina Serdock to pay $279.35 for board, care, maintenance and medical attention previously furnished to the incompetent at the state hospital and to pay $10 per month thereafter until the further order of the court. On December 21, 1953, an order was made directing the guardian to pay $30 per month for such support and maintenance.

The trial court found that the monthly charges hereinabove listed were determined by the Director of Mental Hygiene and that said charges at the rates so determined were made continuously for every month that the incompetent was a patient of a state hospital. It was found that, after deducting payments actually received, the balance due on said charges was $3,901.17 of which $1,670.36 was barred by the statute of limitations and judgment was entered for the balance of $2,230.81.

The only defenses urged, and hence the only grounds pre-

sented in support of the granting of the motion for new trial, are: 1. That the orders determining the amounts to be paid by the guardian to appellant for the care and maintenance of the incompetent are res judicata of the extent of the liability for such care and maintenance; 2. That by submitting the question to the probate court in the guardianship proceeding and by failing to appeal from the orders made therein the appellant has reduced, remitted and cancelled any liability in excess of the amounts allowed by the probate court in the guardianship proceeding.

### The Argument of Res Judicata

During all of the times here in question section 6650, Welfare and Institutions Code, made the estate of the mentally ill person liable for her care, support and maintenance in the state institution of which she was an inmate. This liability was unconditional and not dependent on ability to pay. (*Department of Mental Hygiene* v. *McGilvery,* 50 Cal.2d 742, 749-751 [329 P.2d 689].) At all times here in question section 6651 authorized the Director of Mental Hygiene or his predecessor, Director of Institutions, to fix and determine the monthly rate to be paid for the care, support and maintenance of such persons. (*Estate of Perl,* 110 Cal.App.2d 8 [242 P.2d 101].) At all such times section 6655 provided that:

"If any person committed to a State mental hospital has sufficient estate for the purpose, the guardian of his estate shall pay for his care, support, maintenance and necessary expenses at the mental hospital *to the extent of the estate.* Such payment may be enforced by the order of the judge of the superior court where the guardianship proceedings are pending. On the filing of a petition therein by the department, showing that the guardian has failed, refused or neglected to pay for such care, support, maintenance and expenses, the court, by order, shall direct the payment by the guardian. . . .

"Payment . . . shall not be exacted, however, if there is likelihood of the patient's recovery or release from the hospital and payment will reduce his estate to such an extent that he is likely to become a burden on the community in the event of his discharge from the hospital. . . ." (Emphasis ours.)

The net effect of this legislation is: 1. that the obligation of the estate of the incompetent is unconditional and not dependent on ability to pay; 2. this unconditional liability shall be enforced against the incompetent's estate "to the extent of the estate"; unless 3. the probate court determines that there is a likelihood of the incompetent's recovery and that payment

will reduce his estate to such an extent that he is likely to become a burden on the community if discharged.

The petition of the Department in 1944 alleged that $20 per month had been determined as the charge, that the guardian had not paid this amount and that such payment "will not reduce the estate of said incompetent to the condition that in the event of her discharge . . . she would be likely to become a burden on the community."

When the probate court in acting on this petition ordered the payment of $10 per month, instead of the $20 then determined by the Director acting under the statute to be the proper charge, it could only legally do so by impliedly finding that to pay more than $10 per month would reduce the estate of said incompetent to the condition that in the event of her discharge she would be likely to become a burden on the community. This must be so because in the absence of such finding the probate court was legally bound by section 6655 to order the payment of such expenses "to the extent of the estate."

It is clear from this that all that the probate court could decide in the order directing payment was, not that the $20 per month claimed was not proper or a legal charge against the estate, but only that to then enforce its payment beyond $10 per month would reduce the estate of the incompetent to the condition that if later discharged she would be likely to become a burden on the community. When the amount payable was increased by the later order to $30 per month the power of the court, and so the effect of its order, could be no greater.

Since the liability of the estate was not dependent on ability to pay these orders did not affect the liability. Their only effect was to limit the *present* payments from the estate on account of the total liability to the amounts fixed by the orders of the court in the guardianship proceeding.

### The Argument of Reduction or Remission

Section 6651, Welfare and Institutions Code, provides:

"The Director of Mental Hygiene may reduce, cancel or remit the amount to be paid by the estate . . . on satisfactory proof that the estate . . . [is] unable to pay the cost of such care, support and maintenance."

It is argued that by accepting $10 per month under the first order and seeking and accepting $30 per month under the second order the Director reduced the charge to those

amounts and cancelled and remitted the balance. No formal reduction, cancellation or remission was proved, nor can any such be claimed by implication. The appellant was bound by the implied finding of the court that the payment of more than the monthly amount fixed in each order would deplete the estate of the incompetent to a point where if discharged she might be likely to become a burden on the community. Neither in seeking nor acceding to such a determination can the Director be said to have reduced, remitted or cancelled the balance legally due.

There is no reason in law or logic why the appellant should not be reimbursed to the extent of the decedent's estate for a balance incurred for her care by the appellant, and which could not be legally collected in her lifetime from her estate only because to do so would make it likely that if discharged she would become a burden on the community. Her death has removed that possibility and with her death the only legal ground for not requiring full reimbursement for her care from her estate no longer exists.

Order granting new trial reversed.

Kaufman, P. J., and Draper, J., concurred.

A petition for a rehearing was denied March 27, 1959, and the following opinion was then rendered:

THE COURT.—Section 6655, Welfare and Institutions Code provides: "If a certificate from the medical superintendent of the State Hospital in which the person is confined as a patient is filed . . . in which certificate the medical superintendent states that the patient is suffering from a chronic form of insanity, and that in his opinion a recovery is beyond reasonable hope and that the patient will in all probability continue to be a charge in a State Hospital until death, such certificate shall be prima facie evidence that the patient is not likely to recover or to be released from the hospital . . ."

Respondent argues that because such a certificate was filed in the guardianship proceeding in this case before the orders fixing the amounts of the payments were made the probate court could only have made its orders "by impliedly finding that the Director consented to such a reduction, cancellation or remission." This argument ignores the fact that the certificate is not made *conclusive* but only *prima facie* evidence by the terms of the section relied upon.