[Civ. No. 24986. Second Dist., Div. Two. May 29, 1961.]

Estate of MARY BECK SETZER, an Incompetent Person. CLAUD E. SETZER, as Guardian, etc., Appellant, v. DEPARTMENT OF MENTAL HYGIENE, Respondent.

James C. R. McCall for Appellant.

Stanley Mosk, Attorney General, and Edward M. Belasco, Deputy Attorney General, for Respondent.

FOX, P. J.—This is an appeal by Claud E. Setzer, guardian of the estate of Mary Beck Setzer, an incompetent person, from portions of an order of the probate court made upon consideration of the guardian's 18th annual account and report, covering 1958.

The guardian prayed that his account be settled and approved and that he be allowed his fees. He also requested authorization to spend $30 a month for the personal use and comfort of the incompetent.

The Department of Mental Hygiene filed objections to the account, which included a petition, showing that the guardian owed the department $3,572 as the unpaid balance of charges for the care, support and maintenance of the incompetent at Metropolitan State Hospital. The department requested that the probate court order the guardian to pay the department from the funds of the guardianship estate the sum of $572 and create a lien of $3,000 in favor of the department against the assets of the estate. The department further requested that the court direct the guardian to pay $90 a month to the department for future care of the incompetent.

Following a hearing, the court made findings of fact and conclusions of law, and ordered that the guardian pay $572 to the department on the delinquent account; that an equitable lien in the amount of $3,000 be created on behalf of the department against the assets of the guardianship estate; that the guardian pay the department $90 a month on the current monthly charges for the incompetent's care; that the guardian be permitted to expend $30 monthly for the personal use and comfort of the incompetent; that the guardian be allowed his fees, and that the account, as thus altered and amended, be settled and allowed.

The patient was adjudged insane in December 1940, and was then committed to the state hospital where she has since remained. Appellant was appointed guardian in January 1941, and has served since that time. A certificate of the chronic insanity of the incompetent was filed with the court.

Pursuant to the provisions of sections 6650 and 6651 of the Welfare and Institutions Code, the Director of Mental Hygiene determined the rate for the care of the incompetent at various times. The guardian paid the department all the aforesaid charges up to July 1953. Effective January 1, 1954, the director redetermined the monthly rate for the care of an inmate and fixed it at $75 a month. Nevertheless, the guardian made monthly payments of $60 a month only, notwithstanding a notification that the monthly charges had been increased to $75 by redetermination of the Director of Mental Hygiene. Periodically thereafter the director redetermined the monthly rate for the care of hospital patients. This figure progressively increased. Appellant, however, continued to remit only $60 a month. As a result of the foregoing charges and credits the department's account with appellant for the care of his ward showed a balance due of $3,572 up to March 1959. The department corresponded with the guardian concerning the charges and rendered him statements of the account and its delinquency.

The 18th annual account showed the guardianship estate as having a balance of $1,177.20 and real estate that now has a sale value of between $7,000 and $9,000. The income consisted of $104.35 a month from the State Employees' Retirement System and $40 a month net rental from the above real property.

The guardian has appealed from the portions of the order that (1) directed him to pay the department at this time $572; (2) created an equitable lien against the assets of the estate on behalf of the department for $3,000; and (3) directed the guardian to pay $90 monthly for the incompetent's current care.

 California has established a broad and comprehensive program for care, support, maintenance and treatment of the insane and the mentally ill in state hospitals. To relieve the People from bearing the financial burden of all the expenses involved, the Legislature has provided that the assets of these incompetents (and certain of their relatives) are chargeable with the expense of the care, support, maintenance and treatment of the incompetents at the state hospitals where they are patients. (Welf. & Inst. Code, § 6650; *Department of Mental Hygiene* v. *McGilvery*, 50 Cal.2d 742 [329 P.2d 689]; *Estate of Phipps*, 112 Cal.App.2d 732 [247 P.2d 409, 33 A.L.R.2d 1251]; *Estate of Gestner*, 90 Cal.App.2d 680 [204 P.2d 77].) This liability was determined by the Su-

preme Court to be absolute and unconditional in the Mc-Gilvery case, *supra*. The intent of the Legislature to cast upon the estates of the incompetents the burden of the costs at state institutions was first declared in 1853 when Stockton State Hospital was established, and has continued without interruption since that time. (*Estate of Perl*, 110 Cal.App.2d 8 [242 P.2d 101].) The philosophy underlying this legislation is set forth in *Estate of Yturburru*, 134 Cal. 567, 569 [66 P. 729]. Thus the department, in asserting its claim against the guardian, acted in accordance with the legislative pronouncement contained in section 6650 of the Welfare and Institutions Code, that the guardian of an estate of a mentally ill person "and the estate of such mentally ill person . . . shall be liable for his care, support, and maintenance in a state institution of which he is an inmate." Section 6652 charges the Department of Mental Hygiene with the responsibility of collecting the charges and costs mentioned in section 6650 and provides that it "may take such action as is necessary to effect their collection. . . ." In this connection the guardian argues that the probate court did not have jurisdiction to direct the guardian to pay an asserted past due claim of the department; that the factual dispute must first be resolved by a proper court before a guardian can be said to have failed or refused to pay. ▮ The Welfare and Institutions Code, however, provides the department two separate procedures for collecting from an inmate's estate: section 6658 grants the department the right to institute an independent action in its own name to recover from the guardian of the incompetent's estate the amount due for the care of the incompetent at a state hospital; section 6655 grants the department the right to enter the guardianship proceedings of an incompetent's estate and set forth by petition that the guardian has failed and refused to pay the charges and expenses incurred in the care of the incompetent and thus to procure an order directing payment of same. In this case the department chose the latter procedure, which it had a perfect right to do in view of the above code provisions. This conclusion finds direct support in *Estate of Gestner*, *supra*, (pp. 683, 684). The fact that the department came into the guardianship proceeding by way of making objections to the settlement and allowance of the guardian's annual account and report, and therein petitioned for the relief here in question rather than initially filing its petition to request the guardian to pay for his ward's care from the

estate, cannot possibly adversely affect the jurisdiction of the court to make the appropriate order.

Appellant's reliance on the *Estate of Breslin*, 135 Cal. 21 [66 P. 962], is misplaced. It was decided prior to the passage of the legislation here involved. It is discussed and distinguished in *Estate of Gestner, supra* (pp. 684, 685).

■ The guardian argues that the trial court erred in holding that the Director of the Department of Mental Hygiene properly determined and fixed the various rates charged by the department for the care of incompetents at state institutions because these rate determinations were not promulgated as rules and regulations under the Administrative Procedure Act and filed with the Secretary of State in accordance with the provisions of section 11380 et seq. of the Government Code. The trial court properly concluded that the rate determinations made by the director were not required to be filed with the Secretary of State nor published in the California Administrative Code or Register since they come within the provisions of section 11380, subdivision (a) (1) of the Government Code, which excepts from such filing any regulation establishing or fixing rates, prices or tariffs. (See *Estate of Perl, supra.*) The guardian also seems to argue that the monthly rates for the care of the incompetent had not been properly determined and fixed by the director. He states that the director never announced any computation for rate-making purposes of the average per capita cost of caring for patients in all state hospitals for the preceding fiscal year and that "there is no available statement of the items of cost entering into any determination of the asylum charges." We have no transcript of the proceedings in the trial court before us, consequently it does not appear that the guardian offered any evidence in the trial court along these lines or otherwise attacked the procedure followed by the director. ■ In this state of the record the observations of the court in *Estate of Stobie*, 30 Cal.App.2d 525 [86 P.2d 883], which was a suit to collect for the care of an incompetent while in a state hospital, are here apposite. The court stated (p. 530) : "There is a presumption that an administrative officer, charged by the legislature with an administrative duty, will perform that duty in accordance with the Constitution and laws of the state of California. Such a presumption will prevail until it is attacked and some evidence presented that the officer has been guilty of dereliction and

that the action taken by him has been arbitrary or discriminatory. [Citation.]''

The guardian points out that pursuant to Probate Code, section 1554, he has regularly furnished the department with a copy of his account and given the department notice of the time and place of the hearing thereon; that during none of the previous years has the department filed any objections, and that his several accounts have been duly settled and the orders have become final. Relying on Probate Code, section 1602, the guardian argues that these several orders estop the department from now raising the question of any delinquency in the payments for the care of the incompetent. The doctrine of res judicata is not here applicable. (See *Estate of Hill,* 149 Cal.App.2d 779, 784-785 [309 P.2d 39].) The annual accounting of the guardian was not an adversary proceeding. It was simply a proceeding whereby the court examined the guardian's account and approved the same upon appropriate showing being made that it was in all respects correct and proper. (*In re Estate & Guardianship of Di Carlo,* 3 Cal.2d 225, 234 [44 P.2d 562, 99 A.L.R. 990]; Prob. Code, § 1502.) There was no issue as to any balance due the department for the care of the ward. On this question the trial court found: ''The guardian reported in his annual accounts for the calendar years 1954, 1955, 1956 and 1957 the payments which he had made for the support of the ward *but failed to show any balance owing the Department of Mental Hygiene for the ward's care.''* (Emphasis added.) The 18th account and report, which was before the court, likewise failed to disclose that there was any balance due the department or that any controversy existed with respect thereto. Since there was no actual issue involving the settlement of the department's claim against the incompetent's estate, the principle of res judicata has no application. (*Estate of Blake,* 157 Cal. 448, 456-457 [108 P. 287]; *Title Guarantee & Trust Co.* v. *Monson,* 11 Cal.2d 621, 631 [81 P.2d 944]; *Estate of Hill, supra; cf., Department of Mental Hygiene* v. *Mannina,* 168 Cal.App.2d 215, 217 [335 P.2d 694, 337 P.2d 219].)

The guardian argues that all charges which accrued prior to May 1954 are barred by the four-year statute of limitations. (Code Civ. Proc., § 345.) However, the trial court determined that ''the statute of limitations has not run on this account. . . .'' This is a judgment-roll appeal. It is therefore to be presumed that the trial court received suffi-

cient evidence to support the implied finding underlying this determination. (*Miller* v. *Wood,* 188 Cal.App.2d 711, 712 [10 Cal.Rptr. 770].) By stipulation there are before us certain documents, among which is a copy of the book account kept by the department representing the charges and payments for the care of the incompetent. Examination of this account discloses that any charges that might have been barred are exceeded in amount by payments that have been made. ▮ This is simply a running open account and the rule is that where there is such an account "the creditor may apply a payment to any item. General credits on open accounts stand as payments on the oldest items or such accounts unless some other application be clearly indicated." (*Hollywood Wholesale Elec. Co.* v. *Jack Baskin, Inc.,* 146 Cal.App. 2d 399, 402 [303 P.2d 1049]; *Hollywood etc. Co.* v. *John Baskin, Inc.,* 121 Cal.App.2d 415, 429 [263 P.2d 665]; *Oregon Cedar Products Co.* v. *Ramos & Kohler,* 148 Cal.App.2d 679, 681 [307 P.2d 447].) Thus there is a valid basis for the trial court's determination. Since error must affirmatively appear on the face of the record in a judgment roll appeal in order to require a reversal, it is obvious that we need proceed no further on this point.

▮ Finally, the guardian argues that the court erroneously declared "an equitable lien on the assets of the estate as security for the payment of the remaining $3,000 due the department for the hospital care and support of the ward through March 30, 1959. . . ."

The probate court found that the guardianship estate of the incompetent consisted of $1,177.20 in cash, real property valued at $7,000 to $9,000, and income of $144.35 per month. The court also found that a certificate from the medical superintendent of the state hospital had been filed stating that the incompetent was suffering from a chronic form of insanity. In this factual setting the court, instead of requiring the immediate payment of the entire past due balance of $3,572, ordered the payment of only $572 and declared an equitable lien on the assets of the estate as security for the balance due. The order seems to be in harmony with the purposes of section 6655, Welfare and Institutions Code. The equitable lien not only served to preserve the enforceability of the claim of the department but at the same time served to keep intact the estate of the incompetent during her lifetime. Although a certificate of chronic insanity had been filed with the court,

it was only presumptive evidence of the mental state of the incompetent. It was conceivable that she could return to normalcy and have need of her property for her support. (*Department of Mental Hygiene* v. *Mannina, supra.*) In the latter event, she would be a person qualified for protection within the meaning of section 6655, which provides that "Payment for the care, support, maintenance, and expenses of a person at a State hospital shall not be exacted . . . if there is likelihood of the patient's recovery or release from the hospital and payment will reduce his estate to such an extent that he is likely to become a burden on the community in the event of his discharge from the hospital." It is thus apparent that the trial court took pains to protect the department in the event the incompetent was never released from the hospital; but, on the other hand, sought to protect the incompetent in the event she should later be released by keeping the bulk of her estate intact so that she would not become a burden on the community in the event of such discharge. This is an eminently fair and practical solution of a troublesome problem and within the broad purpose of section 6655. Equitable liens are looked upon with favor and are frequently employed to do justice and equity and to prevent unfair results. (*Wagner* v. *Sariotti,* 56 Cal.App.2d 693, 698 [133 P.2d 430].)

In *Estate of Clanton,* 171 Cal. 381 [153 P. 459], it was held that where the estate of a deceased ward was being settled and money was owed a guardian for the support of the ward, the probate court, being a court of equity, could declare the existence of a lien upon the assets of the estate. In discussing the right of the guardian to have an equitable lien in his favor the Supreme Court stated (p. 386) : "All that he can obtain on the settlement of such account is an order declaring his claim for overpayment a charge against the estate of the ward and directing its payment out of any moneys on hand belonging to the ward. That he has a right to have such charge or lien declared is settled. [Citations.]" The custodial guardian of the incompetent which has expended public funds for her care, is entitled to the same protection as that afforded by the court to the guardian of the ward's estate in the Clanton case.

The probate court, by its creation of an equitable lien, thus did justice both to the incompetent, whose estate was enabled to be preserved during her lifetime, and to the department by making it possible for the department to recover for the tax-

payers of California after the death of the incompetent the unpaid charges for her care. It is difficult to imagine a situation in which it would be more appropriate to impose an equitable lien since it serves to protect all parties concerned.

It is unnecessary to discuss other points mentioned by the guardian in his brief.

The portions of the order from which the guardian has appealed are affirmed.

Ashburn, J., and McMurray, J., pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.