[Civ. No. 20220. First Dist., Div. One. Apr. 12, 1962.]

Estate of TEALIE JAMES MIMS, an Incompetent Person. PEARL FULLER, as Guardian, etc., Petitioner and Appellant, v. DEPARTMENT OF MENTAL HYGIENE, Objector and Respondent.

Morgan J. Doyle for Petitioner and Appellant.

Stanley Mosk, Attorney General, and John Carl Porter, Deputy Attorney General, for Objector and Respondent.

BRAY, P. J.—Appeal by guardian of the incompetent's estate, on an agreed statement of facts, from that portion of the order settling the second and final account of the guardian granting a lien for $2,441.94 upon the real property therein described in favor of the Department of Mental Hygiene of the State of California.

## QUESTIONS PRESENTED

Fundamentally, did the probate court in March 1955, have jurisdiction to create a lien upon the assets of the incompetent, and in 1961, by the order appealed from, to confirm such lien based upon said prior order? This requires the determination of three questions:

1. Where the guardian of an incompetent person dies, may a new guardian be appointed without an order having been made terminating the prior guardianship proceedings?

2. Can such later guardian be appointed in a proceeding differently numbered from the original and without the issuance and service of a citation upon the incompetent?

3. Did the probate court have the power to create a lien in favor of the department in the absence of the filing of a petition therefor and the giving of notice thereof?

## RECORD

July 20, 1948, Tealie James Mims was adjudicated an incompetent person and committed to Napa State Hospital. August 12, his wife, Helen May Mims, was appointed guardian of his estate in the San Francisco Superior Court, proceeding No. 111298. She qualified and served until her death February 13, 1953. No account, final or otherwise, has ever been filed by or on her behalf. Her bond has never been released and that guardianship proceeding still remains open and unsettled. March 19, 1953, Pearl Fuller, a daughter (there is one other daughter, Enera Mims) filed in said superior court in proceeding No. 127480 a petition for appointment as guardian of Tealie's estate. Her petition did not disclose, nor was the court aware of, the existence of the other proceeding, the appointment or death of Helen. Citations were issued in the later proceeding, directed to and served upon the other daughter, Enera, and Napa State Hospital.

No citation was either sought, issued or served upon Tealie. A doctor at the hospital read to Tealie the citation directed to the hospital.

March 27, 1953, Pearl was appointed guardian of the estate. She qualified and has ever since acted as such guardian. March 10, 1955, Pearl filed her first annual account and report in the second proceeding. At that time there was due and owing to the Department of Mental Hygiene $2,441.94 for Tealie's care at the hospital up to September 20, 1953, the date he was released from the hospital. It is agreed that said sum is the fair and reasonable value of the services rendered him. No part of it has been paid.

About the time of the filing of Pearl's first annual account on March 10, 1955, E. C. Brown, a regional supervisor for the department, had a conference with Marville C. Abels (since deceased), attorney for Pearl as guardian. Brown advised Abels of the hospital's claim, requested that the guardian file an account showing the estate's indebtedness to the department, and requested the creation of an equitable lien upon the estate's assets. Abels agreed to this request. However, when the account was filed, no mention was made of the department's claim and no suggestion of the creation of a lien was made.

Notice of the hearing of the account was sent to the hospital, together with a copy of the account. The hospital forwarded them to the department. March 15, the department wrote Abels enclosing an itemized statement of its demand "for your use in preparing an equitable lien against guardianship assets covering the amount of charges due." Shortly thereafter, the department discovered that the account sent it did not contain any reference to its claim or to the requested equitable lien. The department then requested of Abels that he have the guardian file an amended first annual account reporting the indebtedness and requesting the lien. March 30, 1955, assuming that an amended account had been filed, the department filed a "Waiver of Notice of Hearing on the Amendment to the First Annual Account and Report of Guardian, pertaining to an equitable lien to be heard March 31, 1955."

The department was not represented at the hearing which was held on that date. Abels advised the court of the department's claim and orally requested of the court the "creation of an equitable lien" in favor of the department for the amount of its claim. In the order settling the account that

day made, the court decreed an equitable lien in favor of the department for the amount of the claim against the assets of the guardianship estate. Abels then wrote the department that the court had approved the equitable lien in its favor. No written application or petition for this lien was filed.

February 27, 1959, Tealie died. Pearl was thereafter appointed administratrix of his estate. June 29, 1961, Pearl filed in the second guardianship proceeding her second and final account and report. On the ground that no mention was made in it of the department's claim and lien, the department filed objections to the account.

August 11, 1961, an order was made approving the account but decreeing to the department a lien upon the real property of the guardianship (the estate consists solely of real property) in the sum of $2,441.94. It is from that part of the order that the appeal is taken. It is conceded that if the order of March 31, 1955, was a proper order then the order appealed from must be affirmed.

1. *Appointment of a New Guardian on the Death of the Old.*

The guardian first contends that the order of March 31, 1955, was void because the appointment of the second guardian was void, in that no new guardian could be appointed until an order terminating the first guardianship had been made. She relies upon authorities such as Woerner, The American Law of Guardianship, page 89, which hold in effect that so long as the rightful appointment of a guardian remains unrevoked, another guardian may not be appointed, and upon section 1590, Probate Code, which provides that guardianships may be "terminated" by (1) the marriage, or (2) the maturity of the ward; (3) in all other cases the guardianship is terminated only by restoration to capacity, or order of the court.

The first-mentioned authorities are not in point, for the reason that the death of the first guardian automatically revokes the appointment, and on the appointment of the successor guardian, there are not two guardians in existence; there is only one. Section 1590 does not deal with *appointments of guardians*. It deals with *termination of guardianships*. ■ When a guardian dies the guardianship of the ward's estate does not terminate. It continues, but a new guardian must be appointed. When another guardian is appointed there then is in existence only one guardian. It would be absurd to hold that if a guardian dies, no new

guardian of the estate can be appointed until the court terminates the guardianship by the deceased. All that remains to be done is for an accounting to be filed on behalf of the deceased guardian. It is for this purpose that section 1555, Probate Code, gives the court continuing jurisdiction over the deceased guardian's duty to account. It is clear that death terminates the relationship between the individual guardian and ward, but does not terminate the guardianship proceeding. In the meantime it is important to have a new guardian taking care of the estate as there is no one competent to do so.

In *Fresno Estate Co.* v. *Fiske* (1916) 172 Cal. 583 [157 P. 1127], the probate court accepted the resignation of a guardian and approved the guardian's account by an order made, although not filed, the same day as the making of an order appointing a successor guardian. The validity of the second guardianship, and the authority of the second guardian, were attacked on the ground that the order accepting the resignation of and discharging the first guardian could not be effective until it was filed. The court said: ". . . the requirements of previous accounting and delivery of property to a third person may not be attached to the court's power to accept a resignation of a guardian and to confer full powers of guardianship upon another. We are convinced, therefore, that Mr. Fisher was the duly appointed and qualified guardian of the minors, with full authority . . ." to act. (P. 599.)

 The death of a guardian automatically creates a vacancy which may be filled without a court declaration formally terminating the office of the first guardian. The death of the guardian does not terminate the guardianship proceeding itself. While, of course, it would be better procedure to have an official record made of the fact that the first guardian was no longer functioning because of death, the lack of such official record, where the fact of death exists, is immaterial and is not a bar to the appointment of a successor guardian.

2. *Different Proceeding and Lack of Notice to Ward.*

 As before stated, Pearl's petition for appointment as guardian was filed under a different number than that of the first guardianship proceeding. No mention was made therein of the prior proceeding, nor was it called to the attention of the court. However, these facts did not affect the validity of the proceeding nor the power of the court to appoint a

new guardian. Whether called so or not the new guardian was a successor to the old, whose death automatically left the ward's estate without a guardian. Whether the second appointment was made under the number of the first proceeding was unimportant. It was made by the same probate court having jurisdiction of the ward and the ward's affairs. Section 1460, Probate Code, gives the probate court jurisdiction over the subject matter. The cases cited by appellant, *Wright* v. *Superior Court,* 43 Cal.App.2d 181 [110 P.2d 529], *Lee* v. *Superior Court,* 191 Cal. 46 [214 P. 972], *Browne* v. *Superior Court,* 16 Cal.2d 593 [107 P.2d 1, 131 A.L.R. 276], and *Milani* v. *Superior Court,* 61 Cal.App.2d 463 [143 P.2d 402, 935], are not in point for the reason that they dealt with proceedings brought in a court in one county, while in a similar proceeding the court in another county had already assumed jurisdiction. Thus, two different courts were involved. Nor is applicable here the statement in *Martin* v. *Superior Court* (1962) 199 Cal.App.2d 730 [18 Cal.Rptr. 773], ". . . When a matter has been assigned to and is being heard by the judge of one department of the superior court the judge of another department ordinarily has no jurisdiction to interfere with the matter so being heard." (P. 735.) Here it was the same court—the probate court—and the same department thereof, that acted.

Now, as to the failure to issue and serve a citation on the ward—As we have shown, the second petition was, in fact and in law, a petition for the appointment of a *successor* guardian.

In 1931 section 1582, Probate Code, was adopted. It provides: "Any guardian may resign when it appears proper to allow it; and upon the resignation or removal of a guardian, the court may appoint another in his place, after notice and a hearing as in the case of an original appointment." This section is based upon section 1801, Code of Civil Procedure, which provided for the appointment of a new guardian whenever a guardian became insane, otherwise incapable of discharging his trust, unsuitable therefor, or had wasted or mismanaged the estate, or failed to render an accounting. The section provided no requirement of notice to the incompetent or any other person. Appellant contends that because section 1582 requires "notice . . . as in the case of an original appointment" and because section 1461 requires the service of a citation in the case of an original appointment, it means that a citation must be served upon the incompetent to give the court jurisdiction to appoint a successor guardian.

 Section 1461 which sets forth the procedure for the original appointment requires two things: (1) a citation to the incompetent; (2) "[n]otice of the nature of the proceedings and of the time and place of the hearing" to be mailed to the relatives of the incompetent. Section 1582 makes no reference to a citation as in the case of an original appointment, but only a "notice." It is doubtful whether a proper interpretation of section 1582 requires the service of a citation upon a petition for appointment of a successor guardian. However, for the purposes of this case, we are assuming that section 1582 provides that notice of the petition for the appointment of a successor guardian should be given the incompetent, but we do not agree that such notice is jurisdictional, even though it has been held that on the original appointment notice to the incompetent is jurisdictional. (See *Grinbaum* v. *Superior Court* (1923) 192 Cal. 528 [221 P. 635].) On the hearing of the original petition for appointment of guardian such notice is necessary to give the incompetent an opportunity to attack the claim that he is incompetent or needs a guardian. Once these questions are determined against him, he is not concerned with the substitution of "one officer of the court for another." "No substantial right" of his is affected.[1]

Prior to the enactment of section 1582 it was held that on the appointment of a successor guardian, no notice to the incompetent was necessary. (See *In re Tilton* (1911) 15 Cal. App. 244 [114 P. 594]; *Halett* v. *Patrick* (1875) 49 Cal. 590; *Fresno Estate Co.* v. *Fiske, supra,* 172 Cal. 583, 599.) This is the general rule throughout the United States with the exception of Massachusetts. (See 138 A.L.R. 1364 et seq.) The reason given for the rule is that the court acquires jurisdiction over the incompetent and his estate in the original proceeding and such jurisdiction continues after the first guardian ceases to act. The questions first determined were incompetency and the necessity of a guardian. While the incompetency and the necessity of a guardian continues the "court had jurisdiction to do whatever subsequently arose to make the further action of the court necessary, and this

---

[1]In *Chaloner* v. *Sherman* (1917) 242 U.S. 455 [37 S.Ct. 136, 61 L.Ed. 427], the court said that the appointment of a successor guardian ". . . was a mere substitution of one officer of the court for another. No substantial right of the plaintiff was affected. Due process does not require notice and opportunity to be heard in such a proceeding; and the irregularity, if any, was not such as to prevent the court from exercising jurisdiction to determine the matter." (P. 461.)

without further notice to the incompetent.'' (*Tilton, supra*, p. 252.)

As pointed out in *In re Hruska* (1941) 230 Iowa 668 [298 N.W. 664, 138 A.L.R. 1359, 1362], while notice at the time of the original adjudication of incompetency is necessary even though not required by statute, in order to supply due process and by fundamental rules of the common law, because it is then that the status of the ward is fixed and he is deprived of the control of his property, nevertheless, in the absence of statute, due process does not require notice to the incompetent on the appointment of a successor guardian.

In *Foran* v. *Healy* (1906) 73 Kan. 633 [86 P. 470], it was held that probate courts had the same powers over the persons and estates of lunatics as were formerly possessed by courts of chancery at common law, and that at common law no notice was required to be given to the lunatic upon a subsequent appointment of a guardian. In *In re Chambers* (1915) 46 Okla. 139 [148 P. 148], the court stated: ''It is the duty of the county court to protect and preserve the estates of minors; and when a guardian becomes unfit to look after and preserve a minor's estate . . . it then becomes the imperative duty of the court to remove such guardian, and then, to say that the court has no power, on its own motion, to immediately appoint a successor, but that it must wait until some one petitions for the appointment of a successor and the required notice is given, as is required to be given in the appointment of a guardian in the first place, is unreasonable and illogical.'' (P. 150 [148 P.].)

In *Gilmour* v. *Gilmour* (1930) 105 Cal.App. 372 [287 P. 534], a petition for appointment of a guardian of the person and estate of an incompetent was filed and a citation served upon her. However, the citation was not addressed to her. No objection on this ground was made at the hearing of the petition. The reviewing court stated: ''We will concede the citation was irregular in form . . . . But it was not void . . . . We think it cannot be said that the trial court sitting in probate did not have jurisdiction of the person of Sarah Gilmour when it heard the guardianship proceeding.'' (P. 373.) Was not the effect of the reading by the doctor to the incompetent in our case of the citation concerning the appointment of the second guardian, the giving of notice to the incompetent even though the citation itself was directed to the hospital? We think that any irregularity there may have been here was not jurisdictional.

In *In re Green* (1925) 132 Wash. 627 [232 P. 689], a petition for appointment of a guardian of the person and estate of an incompetent was granted. Upon appeal the appointment of the particular guardian was reversed. However, the finding of a necessity for a guardian was affirmed and the cause remanded to appoint some suitable person as guardian. The incompetent appealed from the order appointing the new guardian, contending among other matters that it was error for the court to make such appointment without the knowledge or consent of the incompetent or attorney and without their presence at the hearing. The reviewing court pointed out that notice of the first petition had been given (as in our case) and then stated: ''. . . if notice was necessary before making this appointment, the making of it without such notice was a mere irregularity . . . . The parties were before the court, and the court had jurisdiction of them and of the subject-matter.'' (P. 690 [232 P.].)

In view of the principles announced in these cases, it would be illogical and unreasonable to hold that the requirement in section 1582 of notice to the ward is jurisdictional.

3. *Power of Court to Create a Lien.*

Appellant contends that as no petition for creation of the lien was on file nor any request contained in the guardian's account therefor, and no notice of application for the lien given, the court had no power to create such lien upon the oral request of the guardian's attorney.

It is interesting to note that, while the probate court has the power to declare a lien upon an incompetent's estate for his care at a state hospital (see *Estate of Setzer* (1961) 192 Cal.App.2d 634 [13 Cal.Rptr. 683]), no procedure is expressly provided in the Probate Code for obtaining such a declaration either by the guardian or the department. Section 1530, which appellant contends applies to liens of the type we are considering, does not so apply. It applies only to the sale or mortgaging of, or the placing of a deed of trust on, the incompetent's property to obtain money to pay his debts, including the cost of his care at a state hospital. Section 1530a, at the time of the declaration of the lien, provided: ''The guardian, with the approval of the court, may compromise, compound or settle any claim or demand against the estate or any suit brought by or against the guardian as such, by the transfer of specific assets of the estate, or otherwise.'' Possibly this section is broad enough

to include an application by the guardian for the declaration of a lien in favor of the department. That section provides that the guardian file a "petition . . . showing the advantage of the compromise, composition, settlement, extension, renewal or modification" and give notice of the hearing of the petition "for the period and in the manner required by Section 1200 of this code." That section requires notice by posting. However, it should be pointed out that there is nothing in section 1530a that makes its procedure exclusive. The procedure followed in *Setzer* did not conform to section 1530a.

As pointed out in *Setzer*, section 6655 of the Welfare and Institutions Code provides that the department may file a petition in the guardianship estate showing that the cost of care of the incompetent at the state hospital has not been paid, and the court shall thereupon direct payment by the guardian, and can order the guardian to sell so much of the estate as is necessary to make such payment. While this section does not expressly provide for the declaration of a lien, the court in *Setzer* implies that it gives the court such authority. The section does not prescribe any particular notice to be given when the application is by the department. Undoubtedly a notice to the guardian would be all that is required; or the guardian's presence in court at the hearing would suffice. Had the guardian's account contained a request for the declaration of the lien, there probably, as we have before stated, should have been given notice by posting. There is no requirement that in either event, that is, application by the department or application by the guardian, notice be given the incompetent.

Assuming, however, that section 1200 applies, the failure to give such notice under the circumstances was not jurisdictional. In the first place notice had been given of the filing of the guardian's account and there were before the court all persons required to be before the court on the hearing of the account, namely, the guardian, and the department by waiver. The court then had the power to inquire of the guardian what she had done concerning the care of the incompetent, and upon learning of the estate's indebtedness could have then and there ordered her to pay it, or, as it did, provide for the postponement of the payment by declaring a lien to secure the payment. Notice would not be required to be given the incompetent, because it was the duty of the guardian and the court to protect the incompetent's interests.

Again we point out that, assuming section 1530a applies to proceedings to declare liens of the kind involved here, the section is not exclusive. We can find no reason why under the circumstances here, the order declaring the lien was not a valid one. The incompetent's estate was liable for his care at the hospital. (Welf. & Inst. Code, § 6650.) The guardian of his estate was required to pay for that care. (Welf. & Inst. Code, § 6655.) Moreover, because of the promise of the guardian's attorney, the department did not file the petition it was entitled to file.

In *Estate of Setzer, supra,* 192 Cal.App.2d 634, it was held (pp. 637-638) : ''California has established a broad and comprehensive program for care, support, maintenance and treatment of the insane and the mentally ill in state hospitals. To relieve the People from bearing the financial burden of all the expenses involved, the Legislature has provided that the assets of these incompetents (and certain of their relatives) are chargeable with the expense of the care, support, maintenance and treatment of the incompetents at the state hospitals where they are patients. (Welf. & Inst. Code, § 6650; *Department of Mental Hygiene* v. *McGilvery,* 50 Cal.2d 742 [329 P.2d 689] ; *Estate of Phipps,* 112 Cal.App.2d 732 [247 P.2d 409, 33 A.L.R.2d 1251] ; *Estate of Gestner,* 90 Cal.App.2d 680 [204 P.2d 77].) This liability was determined by the Supreme Court to be absolute and unconditional in the *McGilvery* case, *supra.*''

In *Setzer,* over the objection of the guardian the court provided an equitable lien on the assets of the incompetent's estate in favor of the department. Although the situation there was different than that in our case, in that the department filed objections to the guardian's account and petitioned for the creation of the lien, the principles there established are applicable here. The guardian claimed that the probate court had no power to pay an asserted past claim of the department, that the factual dispute must first be resolved by a proper court before a guardian could be said to have failed or refused to pay. In answer to this contention the court stated that the Welfare and Institutions Code provided the department with two procedures for collecting from an inmate's estate: (1) an independent action against the guardian, and (2) the entry by the department into the guardianship proceeding. The court then stated that the imposition of an equitable lien on the incompetent's assets was ''in harmony with the purposes of section 6655, Welfare and Institutions Code.'' (P.

641.) The court pointed out that by imposing the lien the probate court "sought to protect the incompetent in the event she should later be released by keeping the bulk of her estate intact so that she would not become a burden on the community in the event of such discharge. This is an eminently fair and practical solution of a troublesome problem and within the broad purpose of section 6655. Equitable liens are looked upon with favor and are frequently employed to do justice and equity and to prevent unfair results. (*Wagner* v. *Sariotti,* 56 Cal.App.2d 693, 698 [133 P.2d 430].) '' (P. 642.)

The probate court's power to protect the state in its claim for care of the incompetent and at the same time to protect the incompetent by not requiring an immediate disposal of his property to meet the state's claim is a broad one incidental to its jurisdiction. In fact, it is the duty of that court to act when its attention is called to the existence of a claim for the incompetent's care. There is no requirement that its attention be called by a written petition. As long as all parties who were entitled to receive notice had a written petition been filed, have notice of the proceeding, there is no reason why an oral request should not be sufficient to give the court jurisdiction to act.

*Estate of Clanton* (1915) 171 Cal. 381 [153 P. 459], indicates that a guardian who advances money for the benefit of the incompetent has a lien therefor, which may be declared and foreclosed by the probate court. In other words, the lien is created by the act of advancing moneys for the incompetent's care. So, in the case of the department, the act of providing care for the incompetent creates the lien. The order of the court merely declares it as a matter of record.

Although the general rule is that failure to give the notice required by section 1200 is jurisdictional, there are exceptions to that rule. Thus in *Estate of Pailhe* (1952) 114 Cal.App.2d 658, 662 [251 P.2d 76], the failure to give the notice was held not to be jurisdictional where the court granted the motion of the attorneys for the administrator for fees for extraordinary services, without any notice of the motion having been given. The objector was one of the heirs of the decedent, who was in court when the motion was made. It was held that this fact waived any failure to give notice. In *Estate of Palm,* 68 Cal.App.2d 204 [156 P.2d 62], it was held that an administrator's appearance and participation in a hearing on the merits made innocuous a failure to give

the notice required by section 1206. In *Estate of Pierce* (1938) 28 Cal.App.2d 8 [81 P.2d 1037], the adopted son of the decedent disappeared during the probate proceedings. A trustee was appointed for him, as a missing person. The son was indebted to a creditor for $800. The creditor obtained a judgment against the son and levied execution upon his interest in the estate. In order to prevent that interest from passing to a stranger, the executor sought permission of the court to use estate funds to pay the amount of the judgment. The other heirs consented to the granting of such permission. On final distribution the court by order reduced the distributive share of the missing son by the amount paid by the executor on said judgment. The trustee moved for an order vacating the order, on the ground that it was void, because, among other matters, no notice under section 1200 had been given, and therefore, it was claimed, the probate court had no jurisdiction to make the order. Besides holding that the moving party was actually the recipient of the benefit of the order (as Pearl as guardian in our case is one of the recipients of the benefit of the order questioned here) the court held that the missing heir was present in court through his trustee, and that therefore the failure to give notice to either the heir or the trustee was waived, and the court had jurisdiction to proceed. The court pointed out further that there the same person was trustee for the heir and also executor of the estate and said, "We do not believe that this court should entertain the objection as to lack of notice where the same individual, filling two offices, purports to act only in one, but in fact [is] acting for the benefit of the entire estate and the ward in petitioning for the order.

"Furthermore the petitioner as trustee of the missing heir had knowledge of the investment at the time it was made, and now having waited two and one-half years he should not at this late day be heard to object to the making of the order." (28 Cal.App.2d at p. 12.)

So in our case Pearl represented the incompetent in the making of the lien order and now in the same capacity attempts to object to the making of the very order she obtained.

The order is affirmed.

Tobriner, J., and Sullivan, J., concurred.