[Civ. No. 8286. Fourth Dist., Div. Two. Aug. 2, 1966.]

Estate of SUSAN PRESTON, an Incompetent Person. DE-PARTMENT OF MENTAL HYGIENE, Petitioner and Respondent, v. FLORENCE S. PRESTON, as Guardian, etc., Objector and Appellant.

---

Murray M. Chotiner and Guy & Smith for Objector and Appellant.

Thomas C. Lynch, Attorney General, and Herschel T. Elkins, Deputy Attorney General, for Petitioner and Respondent.

McCABE, P. J.—Florence S. Preston, guardian of the estate of Susan Preston, appeals from a judgment allowing the claim of the Department of Mental Hygiene, State of California, for the maintenance and support of her ward, Susan Preston. (Hereinafter referred to as "Ward".)

The Ward, a mentally retarded child, was committed, pursuant to section 5258, Welfare and Institutions Code, to the Department of Mental Hygiene upon application of her parents at the age of 19. From the date of her institutionalization on July 2, 1959, to the present time she has been a patient at Fairview State Hospital, a hospital for mentally retarded people.

Effective September 20, 1963, the Director of Mental Hygiene established the costs for the care, support and maintenance of the Ward in the state hospital at the rate of $308 per month. On July 1, 1964, this rate was revised upward to $341 per month.

Since October 27, 1961, appellant, Florence S. Preston, has been the guardian of the Ward's estate. In October 1963, the guardian filed her first account current for the guardianship. On March 26, 1965, the Department of Mental Hygiene, State of California, (hereinafter referred to as Department) petitioned the superior court having jurisdiction of the guardianship, for an order directing the guardian to file an account current and to pay for the care, support and maintenance of

the ward. A second account current was filed as of May 21, 1965, which reflected assets of an appraised value of $47,412.86. The guardian objected to that portion of the petition of the Department which sought payment of funds for the Ward's care on the ground that the liability imposed upon the estate by Welfare and Institutions Code, section 7011.5, is the result of unconstitutional class discrimination and is, therefore, violative of the equal protection and due process clauses, citing *Department of Mental Hygiene* v. *Kirchner,* 60 Cal.2d 716 [36 Cal.Rptr. 488, 388 P.2d 720], (cert. granted 379 U.S. 811 [85 S.Ct. 39, 13 L.Ed.2d 26], remanded for further proceedings 380 U.S. 194 [85 S.Ct. 871, 13 L.Ed.2d 753] ; and reiterated solely on state constitution grounds, 62 Cal.2d 586 [43 Cal.Rptr. 329, 400 P.2d 321]).

The trial court found Welfare and Institutions Code, sections 6651 and 7011.5, as applied to the facts of this case were constitutional; granted the Department's claim and a lien agr' nst the Ward's estate in the sum of $7,317.93 for her care, support and maintenance for the period September 20, 1963, to July 31, 1965; and ordered the guardian to pay from the estate $2,000 as partial payment on the $7,317.93 amount; and ordered the guardian to pay $125 per month to be applied on the balance. The trial court ordered an equitable lien on the assets for the unpaid balance of $5,317.93. The guardian applied for and received the authorization of the superior court to prosecute this appeal from the adverse judgment.

In essence the position of the appellant guardian is: The decision of the Supreme Court in the *Kirchner* case, *supra,* 60 Cal.2d 716, which determined section 6650, Welfare and Institutions Code, was violative of the California constitutional guarantee of equal protection of the law as applied to impose liability on the immediate relatives of a mentally deficient person civilly committed to a state hospital is controlling on this appeal. Neither the trial court's conclusions of law and judgment nor appellant confine the issue of ''equal protection of the law'' to the California Constitution. Since appellant relies almost exclusively upon *Kirchner, supra,* the assumption is she is stating denial of equal protection of the law ''as guaranteed by the California Constitution.'' The guardian seeks to extend the holding of the *Kirchner* case to protect the estate of the mentally deficient person from liability, relying upon that portion of the opinion which reads: ''It is established in this state that the mere presence of wealth or the lack thereof in an individual citizen cannot be the basis for valid class discrimination.''

In *Kirchner* the Supreme Court quoted with approval from that court's previous holding in *Department of Mental Hygiene* v. *Hawley*, 59 Cal.2d 247, 255-256[6] [28 Cal.Rptr. 718, 379 P.2d 22] (a case wherein recovery is sought from the father of the patient) which provides: "The enactment and administration of laws providing for sequestration and treatment of persons in appropriate state institutions—subject of course, to the constitutional guaranties—who would endanger themselves or others if at large is a state function; being so, it follows that the expense of providing, operating and maintaining such institutions should (subject to reasonable exceptions against the inmate or his estate) be borne by the state."

It must be pointed out that in *Kirchner, supra,* reimbursement for the mother's care was *not* being sought from the incompetent's estate but from the estate of a deceased daughter. In *Hawley* recovery was being sought from the father of the patient. In *Kirchner*, the Supreme Court referred to section 6650, Welfare and Institutions Code and struck down, as unconstitutional, those provisions of the section wherein recovery is sought from a deceased daughter's estate for the support and maintenance of her mentally ill mother. Under the facts of *Kirchner* it did not obliterate the provisions of that section which provided for recovery from the pateint or his estate.

At an early date in the legislative history of this state there was enacted section 38, Civil Code, which, since 1874, has read as follows: "A person entirely without understanding has no power to make a contract of any kind, but he is liable for the reasonable value of things furnished to him necessary for his support or the support of his family."

In the *Estate of Yturburru,* 134 Cal. 567 [66 P. 729], the guardian of the estate of the incompetent appealed from an order of the superior court ordering her to pay certain sums to a state hospital wherein the ward was institutionalized for the care and support of the ward. The Supreme Court therein stated the ward was liable for the reasonable value of things furnished to him which were necessary for his support, citing section 38, *supra.* The court stated at page 568: ". . . This was so at common law, where the necessaries were furnished by an individual, and we have never seen a case, and do not think any can be found, holding that this rule comes in conflict with any provision of the Constitution of this state or of any other state of the Union. We see no reason why the same rule should not apply to a state hospital for the insane,

which does and furnishes for the insane person only those things required by the law of the state. Certainly, those things which are required by law to be done and furnished for an insane person may safely be classed as necessaries.

"The contention of appellant based on the theory that these hospitals are charitable and eleemosynary institutions, and should not be converted into boarding-houses, finds a ready answer. It is as necessary to have institutions for the restraint of the insane, whether they be rich or poor, as it is to have prisons and almshouses; and these institutions for the insane are charitable only so far as the legislature makes them so. There is nothing in the constitution inhibiting laws extending charity to people in need of it; but it is not necessary to extend charity to those who are able to support themselves; indeed, it would be unreasonable to do so.

"A law in effect requiring that patients at the hospitals for the insane shall be there supported out of their own estates is wise and reasonable, and does not come within any inhibition of the constitution against class legislation. The law, on the contrary, is general in its application, and recognizes no classification except such as in the very nature of things necessarily exists, and cannot be disregarded. We presume that every state in the Union has its 'poor laws,' under which the poor and needy, whether they are decrepit, sick, or insane, find protection and support. Of course, those having means for their own support are not admitted to the benefits of these laws. The distinction between the helpless and those able to help themselves is a natural one, and, so far as we are informed, pervades the laws of all civilized countries."

The *Yturburru* case has not been overruled by any legislation or decision.

■ Under Chapter VII, Division 4, Probate Code, the guardian of an estate is mandatorily required to pay for the support and maintenance of his ward. Also, the guardian upon being sworn obligates himself to perform the duties and obligations required by the laws of guardianships. There is no legislative or decisional distinction pronouncement that a guardian or the guardianship estate is relieved of these obligations, responsibilities or duties by reason of the ward being insane, mentally ill or mentally retarded. Nor is any distinction, statutorily or decisionally, made as to whom the guardian is liable or to whom responsible in the discharge of these statutorily imposed obligations.

On the present appeal there is only a showing the Ward was

committed pursuant to section 5258, Welfare and Institutions Code. This section provides in part: "If the court finds that the person is an epileptic or feeble-minded person, and that he has been a resident of the State for one year next preceding the presentation of the petition, . . . the court may make an order that the person be committed to the Department of Mental Hygiene for placement. . . ."

All parties to this appeal agree the Ward is mentally retarded. Patently, the committing judge used the discretionary power given him by said section. Had the judge not committed the Ward, the guardian of the estate would have had the continuing duty to provide and care for the Ward out of assets of her estate at home or in a private institution.

In the *Guardianship of Hicks,* 228 Cal.App.2d 629 [39 Cal.Rptr. 698], decided after *Kirchner, supra,* the ward was a mentally ill person who had a guardianship of her estate. The trial court allowed a claim against the estate under the provisions of section 6650, Welfare and Institutions Code. In upholding the judgment of the trial court, the appellate court at page 632 said: "The liability of the estate of the incompetent for the charges made for her care at the state hospital is a statutory one and is unconditional. (*Estate of Mims,* 202 Cal.App.2d 332, 344 [20 Cal.Rptr. 667]; *Department of Mental Hygiene* v. *McGilvery,* 50 Cal.2d 742, 749-751 [329 P.2d 689]; *Estate of Setzer,* 192 Cal.App.2d 634, 637-638 [13 Cal.Rptr. 683]; *Department of Mental Hygiene* v. *Mannina,* 168 Cal.App.2d 215, 217 [335 P.2d 694, 337 P.2d 219].) When the Supreme Court, in *Department of Mental Hygiene* v. *Kirchner,* 60 Cal.2d 716 [36 Cal.Rptr. 488, 388 P.2d 720], decided that the statutes imposing liability for cost of care of an incompetent upon certain relatives are unconstitutional, it made a distinction, as it had in *Department of Mental Hygiene* v. *Hawley,* 59 Cal.2d 247 [28 Cal.Rptr. 718, 379 P.2d 22], of the liability of relatives from liability of the estate, and did not overrule the *McGilvery* case insofar as the latter held the estate liability to be unconditional (pp. 719-720)."

*In re Dudley,* 239 Cal.App.2d 401 [48 Cal.Rptr. 790], (hearing denied by Supreme Court, March 16, 1966) decided long after *Kirchner* but citing and distinguishing it, involved an order which had been made by the trial court some quarter of a century before by which the daughter of respondent was committed to a state hospital as a mentally deficient person and the mother charged with paying a monthly sum for her care and maintenance. By her proceeding in the *Dudley* case,

*supra,* and in the lower court, the mother sought to be relieved of the ordered obligation to pay a monthly sum to the county for the care, support and maintenance of her mentally deficient and institutionalized child. The trial court found section 5260, Welfare and Institutions Code, unconstitutional for the same reasons as *Kirchner* found section 6650 unconstitutional under the California Constitution. In *Dudley, supra,* the appellate court found section 5260, *supra,* to be constitutionally sound as applied to the *Dudley* facts. In *Dudley, supra,* it is noted the patient was a mentally deficient person and the mother is seeking relief from paying money to the county as the court directed.

In a reading and analysis of *Kirchner, supra,* and *Hawley, supra,* we find nothing which holds a constitutional proscription in the facts of the case before us. *Kirchner* did not overrule, directly or inferentially, the decisions of *Estate of Yturburru, supra; Estate of Hicks, supra; Goodall* v. *Brite,* 11 Cal.App.2d 540 [54 P.2d 510]. There was not a determination in *Kirchner, supra,* that a mentally retarded person need not pay for his *own* care and maintenance while in a state institution. Factually, in *Kirchner,* it was a mentally ill person (as distinguished from a mentally retarded person) and no recovery was sought against the patient's estate.

To extend *Kirchner,* as appellant insists we do, would require us to overrule the Supreme Court of California, (*Estate of Yturburru, supra*), diametrically disagree with three opinions of the District Court of Appeal (*Guardianship of Hicks, supra; In re Dudley, supra; Goodall* v. *Brite, supra,* 11 Cal.App.2d 540), and ignore section 31, article IV of the Constitution of California.

*The endpoint inescapably resultant from appellant's urged extension of the law of Kirchner* would be that any person with sufficient financial wealth to pay could receive free services at any tax-supported institution, such as city, county and state hospitals and institutions for any civil involvement requiring medical, surgical, hospital, psychiatric, psychological, physical or mental care. Additionally, if extended, such a person could obtain free legal services at tax-supported legal aid boards or clinics, could request and receive court appointed attorneys in criminal proceedings or be allowed to receive distributions in food, clothing or allowances which are presently available to those who can't pay for them, use of the state labor board for collection of disputed wages, be buried in

public tax-supported graveyards, and receive state scholarship awards without a consideration of need.

At the podium of the district court level of the judicial forum it is not for this court to legislate, or overrule the decisions of the Supreme Courts or declare a state constitutional provision unconstitutional federally or to overrule decisions of courts of equal dignity to this one or order the guardian to disregard her legal and sworn duty.

We find upon the facts before us that section 7011.5, Welfare and Institutions Code, is constitutional. This opinion is to be read and understood within the limitations of the facts for the sole question presented on this appeal is the constitutionality of that section.

Judgment affirmed.

Kerrigan, J., and Tamura, J., concurred.

A petition for a rehearing was denied August 15, 1966, and appellant's petition for a hearing by the Supreme Court was denied September 28, 1966.